**Joe Bill BONE, Appellant,**

v.

**The STATE of Texas.**

No. 0473–00.

Court of Criminal Appeals of Texas.

June 19, 2002.

---

David J. Eveld, Seguin, for Appellant.

Frank Follis, Asst. DA, Seguin, Matthew Paul, State's Atty., Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, WOMACK, JOHNSON, KEASLER, HERVEY and HOLCOMB, JJ., joined.

We are once again asked whether an appellate court may reverse a conviction on ineffective assistance of counsel grounds when counsel's actions or omissions may have been based upon tactical decisions, but the record contains no specific explanation for counsel's decisions.[1] Once again we answer that question "no." Therefore, we reverse the judgment of the Fourth Court of Appeals, which found ineffective assistance in this case, *Bone v. State*, 12 S.W.3d 521 (Tex.App.-San Antonio 1999), and affirm the trial court's judgment and sentence.

## I.

Appellant was charged with felony D.W.I. which was enhanced with prior convictions for burglary and possession of a prohibited weapon. At trial, two DPS officers testified that, while they were patrolling the area east of Seguin on the evening of August 16, 1996, they saw a pick-up, driven by appellant, cross the yellow cen-

---

1. We granted both the State Prosecuting Attorney's and District Attorney's petitions for discretionary review:
   1. May an appellate court reverse on grounds of ineffective assistance of counsel where counsel's acts or omissions could have been based upon tactical decisions, and where the record provides no explanation behind counsel's decision? (S.P.A.)
   2. May an appellate court reverse on grounds of ineffective assistance of counsel where the court is unable "to identify specific acts or omissions" that undermine confidence in the outcome of the proceeding under the second prong of *Strickland*? (S.P.A.)

3. The Fourth Court of Appeals' opinion is based on assumptions and speculation that are not supported by the record or applicable case law. There is no showing appellant was harmed by counsel's conduct. (D.A.)

Because these two petitions were granted before our decision in *Ex parte Taylor*, 36 S.W.3d 883 (Tex.Crim.App.2001) (S.P.A. has primary authority to represent the State in the Court of Criminal Appeals), *Taylor* does not apply. *See Thomas v. State*, 65 S.W.3d 38, 39 n. 1 (Tex.Crim.App.2001). In *Thomas*, we considered both the S.P.A.'s and D.A.'s petitions for discretionary review when each petition was granted before *Taylor* was decided.

ter stripe as the vehicle approached them. They turned around, followed, and watched as appellant stopped at a fireworks stand. The officers testified that appellant got out of the truck and walked cautiously and deliberately as the officers approached. When the officers requested identification, appellant gave them a driver's license that had expired in 1994. The officers testified that appellant's eyes were bloodshot, and that he smelled of alcohol, spoke very slowly and slurred his words. After conducting field sobriety tests, the officers concluded that appellant was intoxicated, and they arrested him. At the station, appellant was videotaped, but refused to perform any further physical tests. He also declined to take an intoxilyzer test. When inventorying appellant's truck, the officers found two cold 16 ounce beer cans on the front seat. One can was full, but the other had fallen and spilled on the floorboard.

Appellant testified and admitted that he had three prior DWI convictions, beginning in 1991. He stated that he had not done well on the field test because he had an old leg injury. He explained that his eyes were bloodshot because he had allergies, and he slurred his words because he was wearing dentures. However, he admitted that he drank three beers before being stopped. He said that the beer spilled on the floorboard when he lifted his cousin out of her wheelchair and put her into the truck to take her to visit a boyfriend earlier in the evening. He also admitted that his license had been suspended for a prior DWI and he had simply not yet renewed it.

On cross-examination, the prosecutor impeached appellant's credibility under Rule 609 with evidence of his prior felony convictions for burglary, concealing stolen property, and possession of a prohibited weapon.

Based on this evidence, the jury convicted appellant of felony DWI. The State offered no new evidence at the punishment hearing. Appellant testified again and explained that he was on parole for DWI when he was arrested for this offense. Consequently, he was re-arrested on a parole violator's warrant and after a parole hearing, was returned to prison to serve another year on his prior DWI conviction. Appellant explained that he wrote the D.A. to try to take care of the present charges. He testified that, "I knew I was going back to TDC and I tried to get this county to prosecute me on this charge, so that when I did get out of TDC, I wouldn't have nothing on my back and I could, you know, start my life over ... [but] until I was released from TDC, there was never any answer from the D.A.'s Office here. I wrote letters and made phone calls and everything I could possibly ... do to face these charges while I was incarcerated and I have gotten no response." He also contacted TDCJ staff counsel for help in resolving this charge before he was released. Those efforts failed. Appellant further explained that he had sought treatment for his alcohol problem and was currently in a HOPE program, that he reported to his parole officer daily, and had gotten a job and a family. He told the jury:

I have taken a big step. I am trying to do what I am supposed to be doing.

I am 42 years old and it is—and it is the end of the road; you know. I'm going downhill and I have taken every step possible to try to see that I don't drink anymore. I have done what I am supposed to be doing and I have tried to take care of these charges in numerous ways.

Nonetheless, on cross-examination, appellant admitted to spending most of his adult life in prison. When confronted with a March 19, 1997, bailiff's certificate of

failure to appear in court, taken from the clerk's file in this case, appellant explained that he came to Seguin for a court appearance, but that it was snowy and icy, and the court was closed. He said that a clerk told him to go back home and that someone would send him a letter about when to return. He then again admitted to having had a drinking problem:

Well, I have been around alcohol all my life. My daddy sold beer for the first 16 years of my life. It has always been there and it is a disease. It is like, you know,—It is a disease. I don't know why, you know, that I picked a beer up when I knew I didn't want it, but it happens and so far, since 1996, I haven't had any alcohol. Like I said, I am currently in programs; I am still doing what I am supposed to do on my parole; everything.

Appellant then called Ms. Juanita Barnhill, with whom he was living, and she testified that they had a family relationship, and that appellant acted like a father to her teen-aged children. He helped provide for them and was involved in their school activities. She testified that appellant didn't drink, reported to his parole officer, and had been attending meetings for help with his drinking problem.

During her closing argument, appellant's counsel stated, *inter alia:*

[I]t brings to mind the idea sometimes we get about throw-away people. We have so much in our society that is thrown away and, not to make any type of belittling comparison, we recycle things now ... we are still a society that believes in and maybe unconsciously throws away things.... Mr. Bone was very honest with you about his past and the things that have happened.... He

has turned around his life. I think all of you remember during the jury selection you were asked as an entire panel·how many people's lives had been affected in some way or another by alcoholism and it is getting more and more when you ask that question.... Then we have the scenes of accidents on the road. It is a problem. No one denies: Mr. Bone nor I are denying it is a problem and it takes lives; it ruins lives and it maims lives, but by the same token, we need to balance this with, "Is Mr. Bone's life a throw-away life?"

During his closing argument, the prosecutor did not request a specific sentence, but ended: "I think you have a right as a society to protect yourself; protect the citizens; and to take people off the street who do these things; and we hope you will take him off the street for a long, long time." The jury returned with a sentence of 90 years.

On appeal, appellant argued that his trial counsel performed deficiently by: "(1) failing to pursue prejudice among prospective jurors; (2) making offensive remarks regarding drinking and driving; (3) failing to offer any significant evidence in his favor during the punishment phase of the trial; (4) offering evidence during the punishment phase of the trial that was harmful to his credibility; (5) failing to make the correct objection to the State's attempt to offer into evidence a document which weighed directly on his credibility; and (6) making statements that affirmatively prejudiced him."[2] The court of appeals agreed and concluded "that trial counsel was deficient, and her deficient performance clearly prejudiced appellant. Because counsel's efforts were so minimal throughout the trial, we reverse and remand."[3]

**2.** *Bone,* 12 S.W.3d at 523.

**3.** *Id.*

## II.

■■■ The court of appeals correctly states that the legal standard set out in *Strickland v. Washington*[4] applies to appellant's claim.[5] To prevail on his claims, appellant must first show that his counsel's performance was deficient.[6] Specifically, appellant must prove, by a preponderance of the evidence, that his counsel's representation fell below the objective standard of professional norms.[7] Second, appellant must show that this deficient performance prejudiced his defense.[8] As this Court explained in *Mitchell v. State*, "[t]his means that the appellant must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different."[9] A "reasonable probability" is one sufficient to undermine confidence in the outcome.[10]

■■■ Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance.[11] Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional.[12] As this Court recently explained, rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation: "[i]n the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel."[13]

---

4. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

5. *Bone*, 12 S.W.3d at 523.

6. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *see Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim.App.2002).

7. *Mitchell*, 68 S.W.3d 640, 642.

8. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052 ("This [prejudice prong] requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable").

9. *Mitchell*, 68 S.W.3d at 642.

10. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Mitchell*, 68 S.W.3d at 642.

11. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim.App.2001); *Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App.2000).

12. *See Mitchell*, 68 S.W.3d at 642; *Mallett*, 65 S.W.3d at 64–65.

13. *Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex.Crim.App.1999) (to defeat the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively·demonstrate the alleged ineffectiveness"); *see also Johnson v. State*, 68 S.W.3d 644, 655 (Tex.Crim.App.2002) ("[t]he record does not reveal defense counsel's reasons for not ·objecting to the prosecutor's comments. Given the presumption of effectiveness and the great deference we give .to decisions made by defense counsel, we see nothing in the present record that would compel us to find counsel ineffective"); *Mitchell*, 68 S.W.3d at 642 ("[g]enerally the record on direct appeal will not be sufficient to show that counsel's representation was so deficient as to meet the first part of the *Strickland* standard. The reasonableness of counsel's choices often involves facts that do not appear in the appellate record. A petition for writ of habeas corpus usually is the appropriate vehicle to investigate ineffective-assistance claims"); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App.2001) ("an appellate court 'commonly will assume a strategic motivation if any can possibly be imagined,' and will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney

■ Although the court of appeals acknowledged these general legal principles, it nonetheless concluded that "this record reveals a total absence of advocacy skills and even the minimum effort expended on appellant's behalf was misguided." [14] It stated that counsel "was deficient on voir dire," [15] although none of these purported deficiencies "alone amount[ed] to ineffective assistance." [16] Nonetheless, the court of appeals found counsel's relatively brief (under 30 minutes) voir dire "relevant to the overriding issue: Whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." [17] Nothing in the record proves that counsel's voir dire was the product of an unreasoned or unreasonable strategy, or that there was a fair probability that it led to either an unreliable guilty verdict or unjust punishment. [18]

The court of appeals also faulted counsel for offering only the testimony of Juanita Barnhill and appellant during the punishment phase. [19] "In all, the testimony elicited and evidence brought forth by trial counsel during punishment phase lasted less than 30 minutes." [20] That is 30 minutes longer, however, than the State's punishment case. More importantly, nothing in the record on direct appeal supports a finding that other witnesses or evidence were available. Although it disturbed the court of appeals that counsel did not "produce more in the way of mitigating evidence," [21] this record does not show that

---

would have engaged in it") (quoting 3 W. LaFave, et al., Criminal Procedure §§ 11.10(c) (2d. ed 1999)).

**14.** *Bone,* 12 S.W.3d at 524.

**15.** *Id.* One of counsel's alleged deficiencies was her failure to ask veniremen if they knew the second prosecutor on the case, although she had asked the panel if they knew the district attorney, Mr. Kirkendall, who was co-counsel. *Id.* There is nothing in the record that shows that any panel member did know the second prosecutor, much less that any jury member might be biased because of that relationship. The court of appeals noted that "[o]ne prospective juror, Mr. Frels, admitted to having an association with Mr. Kirkendall through the little league in Seguin, and trial counsel failed to ask Mr. Frels if that would keep him from giving a fair and honest verdict." *Id.* Appellant's counsel did not single out Mr. Frels, but her very next question to the entire panel was: "Does anyone know Mr. Kirkendall well enough that you would feel like it would keep you from giving a fair and honest verdict?" Neither Mr. Frels nor any other venireman responded.

The court of appeals found counsel's conduct during voir dire "particularly disturbing" because she failed to ask follow-up questions of panel members who had raised their hands in response to the State's question concerning whether they or anyone they knew were victims of alcohol. *Id.* While this might not always be the best practice, here, the veniremen had already discussed their personal concerns about alcohol during the prosecutor's voir dire. Every one of these twenty had already individually stated that he could be fair and impartial. Thus it is difficult to assess the value of any additional questioning.

**16.** *Bone,* 12 S.W.3d at 524.

**17.** *Id.* at 525.

**18.** *See, e.g., Jackson v. State,* 877 S.W.2d 768, 769–71 (Tex.Crim.App.1994) (defense counsel's failure to strike venireman who had been victim of crime and who stated that he could not be fair did not establish ineffective assistance of counsel when record did not reveal reasons for counsel's decision); *Delrio v. State,* 840 S.W.2d 443, 446–47 (Tex.Crim.App. 1992) (defense counsel's failure to strike venireman who was former narcotics officer and knew defendant "by virtue of that employment," did not establish ineffective assistance of counsel when record was insufficient to overcome presumption of competence).

**19.** *Bone,* 12 S.W.3d at 525.

**20.** *Bone,* 12 S.W.3d at 525.

**21.** The court of appeals complained:

other mitigating evidence existed. Even if such evidence existed, defense counsel could have reasonably determined that the potential benefit of additional witnesses or evidence was outweighed by the risk of unfavorable counter-testimony.[22]

■ We also note that the State presented a "plain vanilla" case on guilt/innocence and did not produce any additional evidence during the punishment stage. But perhaps such additional aggravating evidence did exist and might have been presented if appellant had introduced additional mitigating evidence. If a reviewing court can speculate about the existence of further mitigating evidence, then it just as logically might speculate about the existence of further aggravating evidence. Ineffective assistance of counsel claims are not built on retrospective speculation; they must "be firmly founded in the record." That record must itself affirmatively demonstrate the alleged ineffectiveness.[23]

■ The court of appeals also concluded that "the evidence trial counsel chose to offer was damaging and prejudicial." [24] As an example, it cited trial counsel's intro-

duction of appellant's letter to the D.A. about either dropping these charges or letting appellant plead to them while he was still in TDCJ. The record shows, however, that appellant himself was anxious to testify about his efforts to dispose of this case while he was in TDCJ. He kept returning to the subject and elaborating on his efforts to "put his past behind him" and to make a fresh start when he last left prison. The court of appeals was "unable to deduce a reasonable trial strategy" for offering appellant's letter into evidence and concluded that it "portrays appellant as callous towards the consequences of his offense and unaware that he has a recurring problem with alcohol." [25] This is a valid interpretation, but not the only one; such evidence also arguably supports appellant's sincerity and contrition. Reasonable minds may differ, but appellant's testimony about his letter and the letter itself do not support only this negative conclusion.

The court of appeals also castigated counsel for her closing argument at the punishment phase, stating that her plea to

we do not know what [appellant's] legal or emotional relationship with Ms. Barnhill or her children is, whether he is a valued father figure, how he has assisted them and could continue to do so if not in prison, whether he has any other positive relationships with family members, or anything about their life together other than he tells the children he disapproves of drinking and attends some unspecified "meeting." Although the evidence exhibited by the prosecution suggests he performs good works such as assisting the disabled, the jury really did not learn anything positive about appellant.

*Id.* at 525–26. Speculation about what other evidence might or might not have been available is precisely why ineffective assistance of counsel claims should rarely be brought on direct appeal. Neither the court of appeals nor this Court has any idea whether such evidence existed, whether it would be favor-

able, or whether counsel intentionally declined to question Ms. Barnhill further because additional testimony might not have been beneficial. *See Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex.Crim.App.1992) (counsel not ineffective for failing to present more mitigating evidence in capital murder trial when defendant did not specify what evidence should have been presented).

22. *See, e.g.,* Tex.R. Evid. 404(b), 405, 608.

23. *Thompson,* 9 S.W.3d at 813–14.

24. *Bone,* 12 S.W.3d at 526.

25. *Id.* Since this was a letter written by appellant, the party-opponent, and mailed to the District Attorney, it would have been admissible under Rule 801(e)(2)(A) if offered by the State.

the jury not to treat appellant as a "throwaway" · person characterized appellant, in the court of appeals' words, as "a dangerous drunk who has yet to accept that he is a danger to society." [26] An equally reasonable interpretation might be that counsel was appealing to the jury's compassion for her admittedly down-on-his luck client who had now turned around his life.

When, as here, a closing argument has a basis in fact, law, and appeal to public policy, courts should, at least, permit the advocate to explain her rationale before condemning her. Obviously, this particular jury was not impressed with appellant's testimony or the defense theory of rehabilitation since it sentenced appellant to 90 years in prison. But the length of the sentence does not necessarily mean that the sentence was due to counsel's incompetence.

■ The court of appeals concluded that, "[i]ndividually, these errors have not shown 'a reasonable probability that, but for counsel's unprofessional errors the result would have been different." [27] Nevertheless, it concluded that "the 'totality of the representation' undermines the court's confidence in the conviction." [28] A vague, inarticulate sense that counsel could have provided a better defense is not a legal basis for finding counsel constitutionally incompetent.

■ The court of appeals simply assumed that each of the examples it noted were, in fact, instances of objectively unreasonable and · unprofessional conduct. Because the court itself did not discern any particular strategy or tactical purpose in counsel's trial presentation, it therefore assumed that there was none. This inverts the analysis. Under *Strickland,* the defendant must prove, by a preponderance of the evidence, that there is, in fact, no plausible professional reason for a specific act or omission. From this trial record, one could conclude that there were legitimate and professionally sound reasons for counsel's conduct or one could speculate that there were not. Under our system of justice, the criminal defendant is entitled to an opportunity to explain himself and present evidence on his behalf. His counsel should ordinarily be accorded an opportunity to explain her actions before being condemned as unprofessional and incompetent.

■ After concluding (without firm support in the record) that counsel performed incompetently, the court of appeals apparently concluded that if appellant's counsel had not been incompetent, there is a reasonable likelihood that appellant would not have been found guilty or would not have been sentenced to 90 years. However, the court of appeals points to

---

26. *Bone,* 12 S.W.3d at 526.

27. *Id.* The court of appeals highlighted more instances that it viewed as deficient performance: counsel gave a brief opening statement at the guilt stage; she, like the prosecutor, waived her right to give an opening statement at punishment. In neither instance does the court suggest what she should have done instead of what she did do. The court of appeals stated that "[c]ounsel was incapable of making a proper objection" because she objected to the prosecutor's introduction of a "failure to appear" document taken from the clerk's file in this case.

Counsel objected to that document because it was "incomplete," and she is right. The official public record was signed by the trial judge on March 19, 1997, but the upper portion, which should specify the date on which a specific defendant did not appear, is not filled-in. Thus, although the document was a public record and the trial judge could take judicial notice of all documents within appellant's official file of the same criminal proceeding, it was irrelevant under rule 401 because it was not "complete."

28. *Id.*

nothing in the record that probably would have, had it been developed more thoroughly, led to a not guilty verdict or a lesser punishment. The court of appeals obviously felt that counsel should have introduced more mitigating evidence, but there is no reason to believe that such evidence existed. The court of appeals did not indicate objective facts in the record to support its lack of confidence in the conviction. *Strickland* requires more-not only proof of professional incompetence but also proof of prejudice.[29]

We therefore conclude that the court of appeals erred when it found that appellant's counsel failed to provide competent representation. That court further erred when it held, without a specific showing of prejudice, that counsel's performance undermined confidence in the conviction. Accordingly, we reverse the judgment of the court of appeals and affirm the judgment and sentence of the trial court.[30]

PRICE, J., concurred in the judgment.

---

**29.** *See, e. g., Ladd v. State*, 3 S.W.3d 547, 570 (Tex.Crim.App.1999) (defendant's failure to make any effort to prove prejudice from defense counsel's allegedly deficient performance during punishment phase of capital murder trial precluded relief on ineffective assistance claim); *Mitchell v. State*, 989 S.W.2d 747, 748 (Tex.Crim.App.1999) (a de-

fendant claiming ineffective assistance of counsel must affirmatively prove prejudice from counsel's deficient performance).

**30.** This resolution in no way affects appellant's entitlement to re-urge this or other appropriate constitutional complaints on a writ of habeas corpus.