COURT OF APPEALS

SECOND DISTRICT OF TEXAS
FORT WORTH
 NO. 2-04-393-CR
 
 BRADY HICKS, JR.                                                                APPELLANT
 
V.
 
THE STATE OF TEXAS                                                                  STATE
 
 ------------
 FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
 ------------
 MEMORANDUM OPINION[1]
 ------------
I. Introduction
        In a single issue, Brady Hicks, Jr. requests that this court set aside his
conviction for retaliation and subsequent sentence of thirteen years and remand
for a new trial or, alternatively, that he be granted a new punishment hearing
because his trial counsel was ineffective by failing to object to evidence of
extraneous conduct.
II. Background
        On the morning of August 6, 2003, Kimberly Copher called the Euless
Police Department to report that she had been sexually assaulted. Responding
to the call, Detective Lewis of the Euless Police Department determined that a
probable suspect for the assault was Hicks, who happened to be Kimberly’s
husband’s best friend.  That same day, Detective Lewis went to Hicks’s home
with a warrant, found him in bed asleep, handcuffed him, and placed him in
custody.  Detective Lewis testified at trial that Hicks appeared to be sober and
that she did not smell alcohol on him.  In the squad car on the way back to the
police department, Hicks repeatedly told the officers that he was going to kill
Kimberly.  He was cautioned not to say anything until they had returned to the
police department so that he could be given his Miranda warnings, but Hicks
responded that he did not need any warnings and continued his diatribe about
how he was going to kill Kimberly once he got out of jail.  Some of his threats
were conditional (i.e., he would carry them out only if he had been wrongly
accused), but some were not.  Once at the police station, Hicks made a
statement that was videotaped and lasted a little over thirty-two minutes.  One
portion of the videotape is as follows:
Hicks:  I’ll be perfectly honest with you. I used to deal drugs.
         Det. Lewis: Well, he [Clarence] seems all right.
 
Hicks: Wait a minute. I used to deal drugs. And I would do . . .
people. And what I mean by doing people, I give ’em dope. 
[inaudible] Freebie, baby. I give ’em so much shit. And then you
come over and ask me for some. I gotta have some money. I
gotcha. You’re wrapped around my finger. Own you. I used to do
that. I don’t do that no more. 
 
         While being booked into the jail and at the arraignment the following
morning, Hicks continued his threats against Kimberly with Euless police officer
Wall present. Also, somewhat contrary to what Detective Lewis observed,
Officer Wall believed that he smelled alcohol on Hicks during the booking-in
process, although Hicks did not appear to be intoxicated. At trial, evidence was
presented that Hicks was less than a model prisoner while awaiting trial. At
one point, he caused a disturbance in the jail by “jacking the bean shoot,”
meaning that he put his arm in a position that kept other inmates from being
able to eat their breakfast. He broke the television set in the pod because he
was tired of watching the Black Entertainment Network. At another point, he
wore a white hood with coke bottle eyes in it, stating, “Fuck all you niggers.” 
He used racial slurs when speaking to Officer White in the Tarrant County Jail
and to the minority inmates and minority officers. According to Officer
Chapman, Hicks also had a habit of flooding his cell and his day room by
clogging up the toilet in the Tarrant County Jail.
        Following the presentation of evidence in the guilt-innocence phase of the
trial that included the previously recounted portion of the videotape, the jury
convicted Hicks of retaliation, which is a third-degree felony, carrying a
punishment range of two to ten years.  Tex. Penal Code Ann. § 12.34 (Vernon
2003), § 36.06 (Vernon Supp. 2004-05).  Hicks pled “true” to the repeat
offender notice in the indictment. His conviction was enhanced to a second-degree felony, carrying a punishment range of two to twenty years.  Tex. Penal
Code Ann. § 12.33 (Vernon 2003).
        During the punishment phase of the trial, the State introduced evidence
of the previously recounted behavior of Hicks while awaiting trial and evidence
that on April 2, 2002, Officer Sandage of the River Oaks Police Department
responded to a call from Brenda Pitman, who indicated that her boyfriend,
Hicks, had assaulted her.  Officer Sandage testified that Pitman had visible
injuries, and as a result, police arrested Hicks. Officer Sandage testified that
Hicks stated during the arrest that they should watch out when he got out of
jail. The State also introduced evidence from the Lake Worth Police Department
that Officer White had been dispatched on December 10, 1993 to the 50/50
Club in Lake Worth and had taken Hicks into custody for public intoxication and
possibly disorderly conduct.  On the way to the Lake Worth Police Department,
Hicks stated that “he was going to get all of [you] pig mother fuckers.”  At the
police department, Hicks tried to hit Officer White with his elbow, caused
Officer White to hit a doorknob, spit on and kicked Officer White, and reiterated
the previous threats about pigs.
        Hicks took the stand in his own defense at the punishment phase of his
trial and attempted to explain the various incidents the State had introduced. 
With regard to the 50/50 Club incident, he testified that he had won money
playing pool, and two men followed him outside and tried to beat him up, as did
Officer White when he arrived to answer the disturbance call. Hicks also
testified that the incident at the jail with Officer White was caused by Officer
White’s wanting to fight him. The various incidents in the jail while Hicks was
awaiting trial were caused by inmates picking on him and by guards allowing
an inmate into his cell to beat him up.  The “bean shoot” incident occurred
because the jail officer would not let him shower before going to court.  He also
denied being racist or having problems with black inmates; however, he
admitted that he had used racial slurs but only after the minority inmates had
“messed” with him.  He explained the white hood incident by stating that black
inmates had been throwing feces in his cell because he would not give them his
commissary money and had been calling him a child molester. He explained the
broken television by saying that the other inmates were making noise while he
was trying to talk to his wife and that he had warned them to be quiet. He also
complained that one of his previous convictions of assault of a police officer
was caused by not having counsel when pleading guilty to the charge.
        With regard to Kimberly’s assault allegation, he testified that Kimberly
was lying, that he had told her that he and his wife were moving to the
country, and that he and Kimberly were not going to have sex anymore. He
also indicated that he had a lot to drink that day.
        Apparently, his attorney’s defensive theory was that Hicks was all talk
and no action, and on cross-examination, Officer Sandage indicated that the
threat made by Hicks about watching out when Hicks got out of jail was
basically just talk. This defensive theory was stressed during closing arguments
as his attorney indicated that Hicks was a person with a big mouth who did not
carry out any of his threats.  For example, although he continued discussing
killing someone, that had never occurred. Further, his attorney argued that
Hicks was intoxicated while making the threats concerning Kimberly, which
were also conditioned on his being wrongly accused.  After deliberation, the
jury assessed punishment at thirteen years’ confinement. This appeal followed.
III. Standard of Review
        The standard of review for claims such as Hicks’s has been restated
recently in Scheanette v. State, 144 S.W.3d 503 (Tex. Crim. App. 2004), cert.
denied, 125 S. Ct. 872 (2005).

  
The proper standard for reviewing an ineffective assistance
of counsel claim was established in Strickland v. Washington, 466
U.S. 668, 104 S.Ct. 2052, 180 L.Ed.2d 674 (1984), and adopted
by this Court in Hernandez v. State, 726 S.W.2d 53
(Tex.Crim.App.1986). Under Strickland, an appellant must first
demonstrate that his trial counsel’s performance was deficient. 
Secondly, he must show that his counsel’s deficient performance
was so serious that it prejudiced his defense, rendering the trial
unfair and the verdict suspect. Strickland, 466 U.S. at 687, 104
S.Ct. 2052; Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838,
122 L.Ed.2d 180 (1993). Appellate review of defense counsel’s
representation is highly deferential and presumes that counsel’s
actions fell within the wide range of reasonable and professional
assistance. Bone v. State, 77 S.W.3d 828, 833
(Tex.Crim.App.2002); Chambers v. State, 903 S.W.2d 21, 33
(Tex.Crim.App.1995). The analysis is undertaken in light of the
‘totality of the representation’ rather than by examining isolated
acts or omissions of trial counsel. Wilkerson v. State, 726 S.W.2d
542, 548 (Tex.Crim.App.1986), cert. denied, 480 U.S. 940, 107
S.Ct. 1590, 94 L.Ed2d 779 (1987). The fact that another attorney
may have pursued a different tactic at trial is insufficient to prove
a claim of ineffective assistance. McFarland v. State, 845 S.W.2d
824, 844 (Tex.Crim.App.1992), cert. denied, 508 U.S. 963, 113
S.Ct. 2937, 124 L.Ed.2d 686 (1993).
   
Under most circumstances, the record on direct appeal will
not be sufficient to show that counsel’s representation was so
deficient and so lacking in tactual or strategic decision-making as
to overcome the strong presumption that counsel’s conduct was
reasonable and professional. Bone, 77 S.W.3d at 833. As this
Court recently explained, rarely will the trial record contain
sufficient information to permit a reviewing court to fairly evaluate
the merits of such a serious allegation: “[i]n the majority of cases,
the record on direct appeal is simply undeveloped and cannot
adequately reflect the failings of trial counsel.” Id. A reviewing
court can frequently speculate on both sides of an issue, but
ineffective assistance claims are not built on retrospective
speculation; rather, they must “be firmly founded in the record.” 
Id.
 

 Scheanette, 144 S.W.3d at 509-10.
IV. Analysis
        Hicks’s single issue on appeal concerns thirty-four seconds of the
videotape introduced at trial in which he discusses his previous drug dealing and
asserts that the failure to object and have this portion of the tape excluded by
his counsel rendered the attorney’s assistance ineffective. This drug dealing
admission was also utilized by the State in its closing arguments during the
guilt-innocence phase of the trial when the State’s counsel made the following
statements:

  
Now, the defendant is not a Mafia boss or he’s not John Gotti, but
he tries to act like he’s one. He’s on the tape telling you about
how he’s a dope dealer, he used to dupe people, get them wrapped
around his finger, he can call people up and have both of them
vanished in one night.
 
 
This portion of the videotape was not mentioned again during the trial. As a
general rule, if the record does not reflect the reason for trial counsel’s action
or inaction, then the conduct is assumed to have been legitimate trial strategy,
and the appellate court will defer to counsel’s decision and deny relief from a
claim of ineffective assistance. Murphy v. State, 112 S.W.3d 592, 601 (Tex.
Crim. App. 2003), cert. denied, 541 U.S. 940 (2004); Freeman v. State, 125
S.W.3d 505, 506-07 (Tex. Crim. App. 2003). Put another way, if the record
is silent regarding a defendant’s counsel’s reasons for action or inaction at trial,
the reviewing court cannot conclude that the performance by the counsel was
deficient. Lopez v. State, 80 S.W.3d 624, 630 (Tex. App.—Fort Worth 2002),
aff’d, 108 S.W.3d 293 (Tex. Crim. App. 2003).
        Without deciding whether trial counsel’s performance was deficient, we
first turn to the second prong of the Strickland requirements because it is
depositive of this appeal.  That requirement is that there must be a showing
that counsel’s errors were so serious that they deprived the defendant of a fair
trial, or put another way, but for counsel’s error, the outcome would have been
different. Strickland v. State, 466 U.S. 668, 687, 694, 104 S. Ct. 2052,
2064, 2068 (1984). Evidence concerning drug usage, if not connected to the
incident on trial, is generally objectionable, that is, there must be “sufficient
common distinguishing characteristics between the extraneous offense and the
primary offense to enable its probative value to outweigh its prejudicial effect.” 
Hines v. State, 571 S.W.2d 322, 325 (Tex. Crim. App. 1978) (holding that a
question inquiring into a defendant’s drug use was objectionable because there
was no proper basis for such an inquiry).
        First, we consider other portions of the tape which were played to the
jury, including the following passages:

  
If this goes on my record, within twenty-four hours of my god
damn release—I don’t care if I get convicted and thrown in
prison—twenty-four hours upon my god damn release from fucking
prison I will kill that bitch . . . I will torture that bitch before I kill
her . . . That bitch don’t know what rape is when I get done with
her ass . . . . When I get out within twenty-four hours I will do her
and it ain’t gonna be rape.
 
 Further, the jury heard from Detective Lewis about Hick’s statements in the
squad car on the way to the police station, including that Hicks was going to
“kill that bitch”; that he didn’t care if he went to jail because when he got out
he was going to kill her and if Clarence got in the way, he would “kill him,
to[o], and the kids”; that he was “going to kill her, that lying mother-fucking
bitch”; and that he did not need any Miranda warnings because he was going
to kill Kimberly when he got out of jail.  He also stated that he wanted to kill
her himself so he could see her eyes when he did it.  At the police station,
Hicks stated that he was going to “kill that bitch for doing what she had done
to him . . . and he was going to take care of this,” and he asked Officer Wall
“what [Officer Wall] thought he would get for killing her.”  Based on the
foregoing, we cannot say that the admission of the thirty-four seconds of the
videotape rendered an unfair trial and suspect verdict.  As such, Hicks’s sole
issue is overruled.
V. Conclusion
        Having overruled Hicks’s single issue, we affirm the trial court’s
judgment.
    
   
                                                                  BOB MCCOY
                                                                  JUSTICE
 

 
 
PANEL A:   LIVINGSTON, DAUPHINOT, and MCCOY, JJ.
 DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 DELIVERED: June 9, 2005

  
NOTES


1.  See Tex. R. App. P. 47.4.