Hicks v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-393-CR

BRADY HICKS, JR. APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In a single issue, Brady Hicks, Jr. requests that this court set aside his conviction for retaliation and subsequent sentence of thirteen years and remand for a new trial or, alternatively, that he be granted a new punishment hearing because his trial counsel was ineffective by failing to object to evidence of extraneous conduct. 

II.  Background

On the morning of August 6, 2003, Kimberly Copher called the Euless Police Department to report that she had been sexually assaulted.  Responding to the call, Detective Lewis of the Euless Police Department determined that a probable suspect for the assault was Hicks, who happened to be Kimberly’s husband’s best friend.  That same day, Detective Lewis went to Hicks’s home with a warrant, found him in bed asleep, handcuffed him, and placed him in custody.  Detective Lewis testified at trial that Hicks appeared to be sober and that she did not smell alcohol on him.  In the squad car on the way back to the police department, Hicks repeatedly told the officers that he was going to kill Kimberly.  He was cautioned not to say anything until they had returned to the police department so that he could be given his 
Miranda 
warnings, but Hicks responded that he did not need any warnings and continued his diatribe about how he was going to kill Kimberly once he got out of jail.  Some of his threats were conditional (i.e., he would carry them out only if he had been wrongly accused), but some were not.  Once at the police station, Hicks made a statement that was videotaped and lasted a little over thirty-two minutes.  One portion of the videotape is as follows:

Hicks:  I’ll be perfectly honest with you.  I used to deal drugs.

Det. Lewis:  Well, he [Clarence] seems all right.

Hicks:  Wait a minute.  I used to deal drugs.  And I would do . . . people.  And what I mean by doing people, I give ’em dope.  [inaudible]  Freebie, baby.  I give ’em so much shit.  And then you come over and ask me for some.  I gotta have some money.  I gotcha.  You’re wrapped around my finger.  Own you.  I used to do that.  I don’t do that no more. 

While being booked into the jail and at the arraignment the following morning, Hicks continued his threats against Kimberly with Euless police officer Wall present.  Also, somewhat contrary to what Detective Lewis observed, Officer Wall believed that he smelled alcohol on Hicks during the booking-in process, although Hicks did not appear to be intoxicated.  At trial, evidence was presented that Hicks was less than a model prisoner while awaiting trial.  At one point, he caused a disturbance in the jail by “jacking the bean shoot,” meaning that he put his arm in a position that kept other inmates from being able to eat their breakfast.  He broke the television set in the pod because he was tired of watching the Black Entertainment Network.  At another point, he wore a white hood with coke bottle eyes in it, stating, “Fuck all you niggers.”  He used racial slurs when speaking to Officer White in the Tarrant County Jail and to the minority inmates and minority officers.  According to Officer Chapman, Hicks also had a habit of flooding his cell and his day room by clogging up the toilet in the Tarrant County Jail . 

Following the presentation of evidence in the guilt-innocence phase of the trial that included the previously recounted portion of the videotape, the jury convicted Hicks of retaliation, which is a third-degree felony, carrying a punishment range of two to ten years.  
Tex. Penal Code Ann.
 § 12.34 (Vernon 2003), § 36.06 (Vernon Supp. 2004-05).  Hicks pled “true” to the repeat offender notice in the indictment.  His conviction was enhanced to a second-degree felony, carrying a punishment range of two to twenty years.  
Tex. Penal Code Ann.
 § 12.33 (Vernon 2003).  

During the punishment phase of the trial, the State introduced evidence of the previously recounted behavior of Hicks while awaiting trial and evidence that on April 2, 2002, Officer Sandage of the River Oaks Police Department responded to a call from Brenda Pitman, who indicated that her boyfriend, Hicks, had assaulted her.  Officer Sandage testified that Pitman had visible injuries, and as a result, police arrested Hicks.  Officer Sandage testified that Hicks stated during the arrest that they should watch out when he got out of jail.  The State also introduced evidence from the Lake Worth Police Department that Officer White had been dispatched on December 10, 1993 to the 50/50 Club in Lake Worth and had taken Hicks into custody for public intoxication and possibly disorderly conduct.  On the way to the Lake Worth Police Department, Hicks stated that “he was going to get all of [you] pig mother fuckers.”  At the police department, Hicks tried to hit Officer White with his elbow, caused Officer White to hit a doorknob, spit on and kicked Officer White, and reiterated the previous threats about pigs. 

Hicks took the stand in his own defense at the punishment phase of his trial and attempted to explain the various incidents the State had introduced.  With regard to the 50/50 Club incident, he testified that he had won money playing pool, and two men followed him outside and tried to beat him up, as did Officer White when he arrived to answer the disturbance call.  Hicks also testified that the incident at the jail with Officer White was caused by Officer White’s wanting to fight him.  The various incidents in the jail while Hicks was awaiting trial were caused by inmates picking on him and by guards allowing an inmate into his cell to beat him up.  The “bean shoot” incident occurred because the jail officer would not let him shower before going to court.  He also denied being racist or having problems with black inmates; however, he admitted that he had used racial slurs but only after the minority inmates had “messed” with him.  He explained the white hood incident by stating that black inmates had been throwing feces in his cell because he would not give them his commissary money and had been calling him a child molester.  He explained the broken television by saying that the other inmates were making noise while he was trying to talk to his wife and that he had warned them to be quiet.  He also complained that one of his previous convictions of assault of a police officer was caused by not having counsel when pleading guilty to the charge. 

With regard to Kimberly’s assault allegation, he testified that Kimberly was lying, that he had told her that he and his wife were moving to the country, and that he and Kimberly were not going to have sex anymore.  He also indicated that he had a lot to drink that day. 

Apparently, his attorney’s defensive theory was that Hicks was all talk and no action, and on cross-examination, Officer Sandage indicated that the threat made by Hicks about watching out when Hicks got out of jail was basically just talk.  This defensive theory was stressed during closing arguments as his attorney indicated that Hicks was a person with a big mouth who did not carry out any of his threats.  For example, although he continued discussing killing someone, that had never occurred.  Further, his attorney argued that Hicks was intoxicated while making the threats concerning Kimberly, which were also conditioned on his being wrongly accused.  After deliberation, the jury assessed punishment at thirteen years’ confinement.  This appeal followed.

III.  Standard of Review

The standard of review for claims such as Hicks’s has been restated recently in 
Scheanette v. State
, 144 S.W.3d 503 (Tex. Crim. App. 2004), 
cert. denied
, 125 S. Ct. 872 (2005).  

The proper standard for reviewing an ineffective assistance of counsel claim was established in 
Strickland v. Washington
, 466 U.S. 668, 104 S.Ct. 2052, 180 L.Ed.2d 674 (1984), and adopted by this Court in 
Hernandez v. State
, 726 S.W.2d 53 (Tex.Crim.App.1986).  Under 
Strickland
, an appellant must first demonstrate that his trial counsel’s performance was deficient.  Secondly, he must show that his counsel’s deficient performance was so serious that it prejudiced his defense, rendering the trial unfair and the verdict suspect.  
Strickland
, 466 U.S. at 687, 104 S.Ct. 2052; 
Lockhart v. Fretwell
, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).  Appellate review of defense counsel’s representation is highly deferential and presumes that counsel’s actions fell within the wide range of reasonable and professional assistance.  
Bone v. State
, 77 S.W.3d 828, 833 (Tex.Crim.App.2002); 
Chambers v. State
, 903 S.W.2d 21, 33 (Tex.Crim.App.1995).  The analysis is undertaken in light of the ‘totality of the representation’ rather than by examining isolated acts or omissions of trial counsel.  
Wilkerson v. State
, 726 S.W.2d 542, 548 (Tex.Crim.App.1986), 
cert. denied
, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed2d 779 (1987).  The fact that another attorney may have pursued a different tactic at trial is insufficient to prove a claim of ineffective assistance.  
McFarland v. State
, 845 S.W.2d 824, 844 (Tex.Crim.App.1992), 
cert. denied
, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993).

Under most circumstances, the record on direct appeal will not be sufficient to show that counsel’s representation was so deficient and so lacking in tactual or strategic decision-making as to overcome the strong presumption that counsel’s conduct was reasonable and professional.  
Bone
, 77 S.W.3d at 833.  As this Court recently explained, rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation:  “[i]n the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel.”  
Id.
  A reviewing court can frequently speculate on both sides of an issue, but ineffective assistance claims are not built on retrospective speculation; rather, they must “be firmly founded in the record.”  
Id.

Scheanette
, 144 S.W.3d at 509-10.

IV.  Analysis

Hicks’s single issue on appeal concerns thirty-four seconds of the videotape introduced at trial in which he discusses his previous drug dealing and asserts that the failure to object and have this portion of the tape excluded by his counsel rendered the attorney’s assistance ineffective.  This drug dealing admission was also utilized by the State in its closing arguments during the guilt-innocence phase of the trial when the State’s counsel made the following statements:

Now, the defendant is not a Mafia boss or he’s not John Gotti, but he tries to act like he’s one.  He’s on the tape telling you about how he’s a dope dealer, he used to dupe people, get them wrapped around his finger, he can call people up and have both of them vanished in one night. 

This portion of the videotape was not mentioned again during the trial.  As a general rule, if the record does not reflect the reason for trial counsel’s action or inaction, then the conduct is assumed to have been legitimate trial strategy, and the appellate court will defer to counsel’s decision and deny relief from a claim of ineffective assistance.  
Murphy v. State
, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 940 (2004); 
Freeman v. State
, 125 S.W.3d 505, 506-07 (Tex. Crim. App. 2003).  Put another way, if the record is silent regarding a defendant’s counsel’s reasons for action or inaction at trial, the reviewing court cannot conclude that the performance by the counsel was deficient.  
Lopez v. State
, 80 S.W.3d 624, 630 (Tex. App.—Fort Worth 2002), 
aff’d
, 108 S.W.3d 293 (Tex. Crim. App. 2003).  

Without deciding whether trial counsel’s performance was deficient, we first turn to the second prong of the 
Strickland
 requirements because it is depositive of this appeal.  That requirement is that there must be a showing that counsel’s errors were so serious that they deprived the defendant of a fair trial, or put another way, but for counsel’s error, the outcome would have been different. 
 Strickland v. State
, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 2064, 2068 (1984).  Evidence concerning drug usage, if not connected to the incident on trial, is generally objectionable, that is, there must be “sufficient common distinguishing characteristics between the extraneous offense and the primary offense to enable its probative value to outweigh its prejudicial effect.”  
Hines v. State
, 571 S.W.2d 322, 325 (Tex. Crim. App. 1978) (holding that a question inquiring into a defendant’s drug use was objectionable because there was no proper basis for such an inquiry). 

First, we consider other portions of the tape which were played to the jury, including the following passages:  

If this goes on my record, within twenty-four hours of my god damn release—I don’t care if I get convicted and thrown in prison—twenty-four hours upon my god damn release from fucking prison I will kill that bitch . . . I will torture that bitch before I kill her . . . That bitch don’t know what rape is when I get done with her ass . . . . When I get out within twenty-four hours I will do her and it ain’t gonna be rape.

Further, the jury heard from Detective Lewis about Hick’s statements in the squad car on the way to the police station, including that Hicks was going to “kill that bitch”; that he didn’t care if he went to jail because when he got out he was going to kill her and if Clarence got in the way, he would “kill him, to[o], and the kids”; that he was “going to kill her, that lying mother-fucking bitch”; and that he did not need any 
Miranda 
warnings because he was going to kill Kimberly when he got out of jail.  He also stated that he wanted to kill her himself so he could see her eyes when he did it.  At the police station, Hicks stated that he was going to “kill that bitch for doing what she had done to him . . . and he was going to take care of this,” and he asked Officer Wall “what [Officer Wall] thought he would get for killing her.”  Based on the foregoing, we cannot say that the admission of the thirty-four seconds of the videotape rendered an unfair trial and suspect verdict.  As such, Hicks’s sole issue is overruled.

V.  Conclusion

Having overruled Hicks’s single issue, we affirm the trial court’s judgment.

BOB MCCOY

JUSTICE

PANEL A: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  June 9, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.