**Opinion issued July 14, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00012-CR

————————————

**ROCHAWN RAY DAVIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 14CR0800**

---

## MEMORANDUM OPINION

A jury convicted appellant Rochawn Ray Davis of the state-jail felony offense of possession of cocaine in an amount less than one gram. *See* TEX. HEALTH & SAFETY CODE § 481.115(b); TEX. PENAL CODE § 12.35. The court found two enhancement allegations true and sentenced Davis to 14 years in prison. *See*

TEX. PENAL CODE § 12.425(b). Davis raises three issues on appeal. He argues that the trial court erred by denying his request for a presentence investigation prior to sentencing, the evidence was insufficient to support the court's finding that the enhancement allegations were true, and his trial counsel rendered ineffective assistance by failing to advise him of his right to elect court or jury sentencing.

Finding no reversible error, we affirm.

## Background

Galveston Police Officer G. Parris stopped Rochawn Davis for a routine traffic violation. The officer noticed an open bottle of beer in the center console of Davis's pickup truck. With permission from Davis, Officer Parris poured out the beer, observing that the bottle was nearly full and still cold. It was just after 8:00 pm on a Friday night, and Davis said that he was returning home from a long work shift. When a bystander approached the truck, Officer Parris called for backup. When Officers Martinez and Cantu arrived, Davis became visibly nervous. Officer Parris requested and obtained consent to search the truck.

Two beige colored rocks of crack cocaine, which were later determined to weigh approximately 1.53 grams, were found in the center console cup holder. A smaller crumb of crack cocaine, which was estimated to weigh much less than a gram, was found on the driver's seat.

Davis was arrested and charged with possession of cocaine in an amount between one and four grams. The indictment included two enhancements, alleging that Davis had been convicted twice previously of the felony offense of possession of a controlled substance, the second conviction occurring after the first had become final. At trial, there was some evidence that Davis had told the responding police officers that the rocks of crack cocaine found in the center console belonged to his uncle. The court submitted a charge on the lesser-included offense of possession of less than a gram of cocaine based on the defensive theory that Davis was not in possession of the rocks of cocaine found in the center console but only of the crumb of cocaine found on the driver's seat. The jury convicted Davis of this lesser-included offense, which is a state-jail felony.

Defense counsel then announced on the record that Davis had elected trial-court sentencing. Observing that a sentence less than ten years was possible, he requested that a presentence investigation report (PSI) be prepared before final sentencing.

The trial court heard punishment evidence, including seven prior criminal judgments that were admitted without objection. These judgments showed a pattern of criminal activity, spanning 20 years, beginning when Davis was 20 years old, including 13 criminal convictions, among them possession of a controlled substance, assault causing bodily injury, and evading arrest.

Galveston County Sheriff's Deputy W. Kilburn testified that he is a forensic investigator with expertise in fingerprint analysis. He testified that he took Davis's fingerprints that day, recorded them on a print card, and compared them to the print cards that related to the judgments for the convictions alleged as enhancements in the indictment. Deputy Kilburn testified that the fingerprints were made by the same person.

Davis presented mitigating evidence from his fiancée and sister, both of whom asked the court for leniency. His fiancée testified that she depended on him for financial support and physical assistance because she is physically disabled. She also praised his influence on her teenaged daughter. Davis's sister testified that he helped care for their mother.

After presenting its punishment evidence, defense counsel reiterated the request for a PSI: "Subject to the PSI that we've requested we have no further evidence to present to the Court at this time. So we rest subject to the PSI." After a discussion about eligibility for community supervision, the court realized that Davis had not been formally arraigned on the enhancement allegations. The court reopened the punishment hearing to allow the State to formally arraign Davis as to the enhancement allegations. He pleaded not true to both. Defense counsel specifically asked whether the court was denying the requested PSI. The trial court

did not specifically rule on the motion for a PSI. Instead, the court invited both parties to submit briefs as to Davis's eligibility for community supervision.

Approximately five weeks later, the trial court held a hearing for entry of judgment and sentenced Davis to 14 years in prison. No mention was made of a PSI; neither a PSI nor a waiver of a PSI appears in the record.

Davis filed a motion for new trial, arguing that his trial counsel rendered ineffective assistance of counsel. Among other things, the motion alleged that trial counsel failed to advise him that he had the right to elect judge or jury sentencing, failed to elect to have the judge consider a PSI prior to rendering judgment, and failed to inform him that he had the right to challenge the enhancement allegations. The trial court held an evidentiary hearing at which both Davis and his trial counsel, Mark Aronowitz testified. Aronowitz testified that he counseled Davis on each of these matters. His strategy was to elect trial court-sentencing because he expected that after convicting Davis on a lesser-included offense, learning of his extensive criminal record would cause the jury to be unsympathetic, and he anticipated that this would result in an especially harsh punishment. He testified that Davis urged him to proceed to sentencing without the PSI because he was becoming anxious waiting and wanted finality. He also candidly admitted that Davis had been unhappy with his representation.

Davis testified that he followed his attorney's advice regarding the PSI and election of trial court sentencing, but he continued to assert that his attorney did not explain his choices or any strategy to him. He testified that his counsel's testimony about his trial strategy was a lie.

The motion for new trial was overruled by operation of law, and Davis appealed.

## Analysis

Davis challenges his sentence in three issues. In his first issue, he challenges the trial court's entry of his sentence without the benefit of a PSI. In his second issue, he challenges the evidence to support the enhancement allegations, without which the punishment range would have been lower. In his third issue, he asserts that he received ineffective assistance of counsel because his attorney allegedly failed to inform him that he had the right to elect to have the jury assess punishment.

## I. Denial of presentence investigation report

In his first issue, Davis argues that the court committed reversible error by denying his request for a PSI. Specifically, he contends that the court erred by failing to order a PSI because the statutory duty to do so is mandatory. The Code of Criminal Procedure provides:

> Except as provided by Subsection (g), before the imposition of sentence by a judge in a felony case, . . . the judge shall direct a

supervision officer to report to the judge in writing on the circumstances of the offense with which the defendant is charged, the amount of restitution necessary to adequately compensate a victim of the offense, the criminal and social history of the defendant, and any other information relating to the defendant or the offense requested by the judge. It is not necessary that the report contain a sentencing recommendation, but the report must contain a proposed client supervision plan describing programs and sanctions that the community supervision and corrections department would provide the defendant if the judge suspended the imposition of the sentence or granted deferred adjudication.

TEX. CODE CRIM. PROC. art. 42.12, § 9(a). Subsection (g) provides an exception from the requirement to prepare a PSI when punishment will be assessed by a jury, the offense is capital murder, the only available punishment is imprisonment, or the defendant has agreed to imprisonment under a plea bargain agreement which the judge intends to follow. *Id.* art. 42.12, § 9(g).

Davis was convicted of possession of less than a gram of cocaine, which is a state-jail felony. None of the subsection (g) exceptions applied because Davis did not elect jury sentencing, he was not convicted of capital murder, the punishment range for a state-jail felony does not preclude community supervision, and there was no plea bargain. As such, the Code of Criminal Procedure required a PSI. *See Whitelaw v. State*, 29 S.W.3d 129, 132 (Tex. Crim. App. 2000).

Based on Aronowitz's testimony about conversations with his client, the State argues that Davis waived the right to have a PSI prepared. Defense counsel requested a PSI after the jury returned its guilty verdict and before the punishment

hearing began. At the conclusion of the punishment hearing, defense counsel again asked for a PSI, and after a discussion about whether Davis was eligible for community supervision, defense counsel specifically asked whether the court was denying the requested PSI. The trial court did not specifically grant or deny the request for a PSI. Approximately five weeks later, the court held a hearing on entry of judgment and, without a PSI, sentenced Davis to 14 years in prison.

In *Jimenez v. State*, 446 S.W.3d 544 (Tex. App.—Houston [1st Dist.] 2014, no pet.), this court held that a trial court implicitly denied a request for a PSI by holding a punishment hearing without first obtaining a PSI. *Jimenez*, 446 S.W.3d at 550. In this case, the trial court both received evidence relevant to punishment and entered judgment without obtaining a PSI. We conclude that the trial court implicitly denied Davis's request for a PSI.

Failure to order a PSI is statutory error, and we apply the harm analysis for non-constitutional error. *See* TEX. CODE CRIM. PROC. art. 42.12, § 9(a); TEX. R. APP. P. 44.2(b). Neither Davis nor the State has the burden on the question of harm; instead, we review the record as a whole to determine if there was any harm, disregarding any error that does not affect substantial rights. *See Johnson v. State*, 43 S.W.3d 1, 5 (Tex. Crim. App. 2001); TEX. R. APP. P. 44.2(b).

In his brief, Davis contends that he was harmed simply because he was denied a full punishment hearing. Nothing in the record identifies any mitigation

8

evidence that could have been presented in a PSI. Davis's motion for new trial affidavit did not present new mitigating facts or identify new witnesses. Nor did his testimony from the hearing on his motion for new trial. At the hearing on the motion for new trial, defense counsel testified: "All the evidence that would have been in a presentence report was given by testimony in the punishment hearing." For example, in the original punishment hearing, the court learned of Davis's extensive criminal history, his recent work history, and the supportive role he played in his family.

To show harm, Davis was required to show that his substantial rights were affected by the error committed by the trial court. No such harm has been shown in this case, when there has been no showing that the lack of a PSI could have had any influence on the trial court's sentence. The record does not show that the lack of a PSI affected Davis's substantial rights. Accordingly, we overrule this issue.

## II. Sufficiency of the evidence to support enhancements

In his second issue, Davis argues that there is "no evidence" that he is the same person who was convicted in the prior felonies relied upon as enhancements for the charged offense.

"To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction." *Flowers v. State*, 220 S.W.3d 919,

921–22 (Tex. Crim. App. 2007). No particular manner of proof or specific words are required to establish either element. *Id.* at 922. "Just as there is more than one way to skin a cat, there is more than one way to prove a prior conviction." *Id.*

When reviewing the legal sufficiency of the punishment-phase evidence, we view the evidence in the light most favorable to the outcome and determine whether any rational trier of fact could have believed beyond a reasonable doubt that Davis was the person who committed the two prior offenses alleged in the indictment. *See Williams v. State*, 273 S.W.3d 200, 213 (Tex. Crim. App. 2008); *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). The trier of fact is the sole judge of the weight and credibility of the evidence. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). "We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact." *Wiley v. State*, 388 S.W.3d 807, 813 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *see Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

Deputy Kilburn testified at trial that he took Davis's fingerprints on a card that same day, and the card was introduced into evidence as Exhibit 13. In addition, judgments from the two prior convictions alleged in the indictment were introduced into evidence without objection as Exhibits 14 and 15. He testified that he compared the fingerprints on the judgments to the fingerprints on the print

10

cards, and they matched. In his brief, Davis quoted the entirety of the Deputy

Kilburn's testimony regarding the fingerprint comparisons, and we reprint it here:

Q.      Now, did you compare those fingerprints with any judgment?

A.      Yes, sir, I did.

Q.      And when you compared those fingerprints, did you match the fingerprints from the print card to the judgment?

A.      Yes, sir.

Q.      And were they identical—were the fingerprints on the judgments identical to the fingerprint on the print card?

A.      In my experience I would say that they were both made by the same source.

Q.      I'm going to show you what has been marked as State's Exhibit 14 and 15. Do you recognize these documents?

A.      Yes, sir.

Q.      And are these the same documents in which you compared to the known fingerprints earlier today?

A.      Yes, sir.

Q.      Do they fairly and accurately represent the same print cards that you used to make that comparison?

A.      Can I flip through them real quick?

Q.      Yes.

A.      Yes, sir.

Q.      And have they been altered in any way?

A.      No, sir.

11

Davis's appellate argument on this point concludes:

> The evidentiary problem for the State is that the only question asked to connect the two documents (S. Ex. 14 & 15) to the known print card (S. Ex. 13) beyond a reasonable doubt is the last question and it is posed as a foundation question. By asking, "do they fairly and accurately represent the same print cards," the State has not offered any credible evidence that the prints from Appellant match the prior judgments.

Although Davis frames this issue as a lack of evidence to support the enhancements, the argument identifies a conflict of fact or inconsistency in the evidence that lies wholly within the province of the trier of fact to resolve. Deputy Kilburn's testimony showed that he took Davis's fingerprints on the day of trial, compared them to the fingerprints associated with his two prior convictions, and found that all three sets of fingerprints were "made by the same source." The trial court as factfinder was entitled to believe Deputy Kilburn's testimony if it found him to be credible.

We hold that the evidence is legally sufficient to support the trial court's findings that the enhancement allegations were true, and we overrule this issue.

## III.    Ineffective assistance of counsel

In his third issue, Davis argues that he received ineffective assistance of counsel because his attorney allegedly did not tell him that he had a right to elect jury sentencing. Because Davis first raised the issue of ineffective assistance of counsel in a motion for new trial, we must determine whether the trial court abused

its discretion by denying the motion for new trial. *See Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). At a hearing on a motion for new trial, the trial court is the sole judge of witness credibility. *Acosta v. State*, 411 S.W.3d 76, 90 (Tex. App.—Houston [1st Dist.] 2013, no pet.). We defer to the trial court on factual matters, viewing the evidence in the light most favorable to the court's ruling, which we will reverse only if it was arbitrary, clearly erroneous, or not supported by any reasonable view of the record. *Riley*, 378 S.W.3d at 457.

To prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence that (1) his trial counsel made errors so serious that he was not functioning as counsel under the Constitution and (2) a reasonable probability exists that, but for trial counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

At the hearing on the motion for new trial, Davis and his trial counsel gave conflicting testimony about the election for trial court sentencing. Davis testified that he never discussed with his attorney whether to elect jury or trial court sentencing. He did not recall hearing his attorney announce in open court that he had elected trial court sentencing. He testified that he did not know that he had to make the election before trial. But then Davis interjected:

13

> This is not my first time in jail. . . . It's common knowledge in the jailhouse that juries will not normally—unless it's a violent crime—give out more time than a judge. . . . I didn't know that I had to pick one before the jury started. I thought that after the jury came back, I got to pick jury or judge.

Aronowitz testified that there was no written election for trial court sentencing, but he specifically remembered conferring with Davis at a pretrial hearing when the trial court directed him to do so and state the election on the record. He testified that he specifically recalled informing Davis of his right to have the jury assess his punishment. He recommended not to have the jury assess punishment, and Davis accepted that recommendation. Aronowitz testified that he considered Davis's extensive criminal history in making this recommendation. Davis, who was in his mid-forties, had 13 prior criminal convictions spanning 20 years, including three felonies.

Aronowitz considered three possible outcomes from the guilt-or-innocence phase. If the jury found Davis not guilty, the punishment election was irrelevant. If the jury found him guilty of the offense as charged in the indictment, the risk was that the jury also would find the enhancement allegations true, increasing the punishment range to 25 years to life in prison. Aronowitz believed that faced with a lengthy criminal history, which essentially showed convictions in every year in which Davis was not already in prison, the jury would assess a harsh punishment. A third possible outcome was that the jury would find Davis guilty of the lesser-

included offense, possession of the smaller amount of cocaine, as the jury actually did. In that circumstance, Aronowitz was concerned that he and Davis would lose credibility with the jury upon the admission of Davis's lengthy criminal history. If the jury felt tricked, it might be inclined to assess a harsh penalty. On the other hand, Aronowitz also believed that the charged offense would be seen as "a run-of-the-mill drug case" by the trial court, unlikely to draw an unusually stiff punishment.

Davis raised this complaint of ineffective assistance of counsel in the trial court by way of his motion for new trial. The trial court was the sole judge of the credibility of the witnesses and as such was tasked with resolving the directly conflicting testimony on the fact question of whether Aronowitz advised Davis about his right to elect to have the jury assess punishment. *See Acosta*, 411 S.W.3d at 90. It was within its discretion to accept Aronowitz's testimony and reject the contrary testimony offered by Davis. Accepting Aronowitz's testimony as true would negate a finding of ineffective assistance of counsel on the matter of whether he advised Davis regarding the punishment election. As such, we conclude that the court did not abuse its discretion by allowing the motion for new trial to be denied by operation of law. We overrule Davis's third issue.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Higley, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).