COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CRAIG STEPHEN GERHARDT, SR., | § | No. 08-10-00007-CR |
| Appellant, | § | Appeal from the |
| V. | § | 221st Judicial District Court |
| THE STATE OF TEXAS, | § | of Montgomery County, Texas |
| Appellee. | § | (TC# 08-02-01425-CR) |
| | § | |
| | § | |

**O P I N I O N**

Appellant was convicted of indecency with a child by sexual contact. The trial court assessed punishment at 6 years' confinement. After the court denied his motion for new trial, Appellant perfected this appeal. He argues that he was deprived of his Sixth Amendment right to effective assistance of counsel, and that the evidence was factually insufficient to support his conviction.

In the early morning of November 11, 2007, Appellant's daughter, Sarah Gerhardt Boyd, dropped off her five-year-old daughter, J.G., at Appellant's home before heading to work. Susan Gerhardt, Appellant's wife, was in the hospital at that time, and only Appellant and his son, C.J., were at home that morning. At 10 or 10:30 a.m. that day, while C.J. was still in his bedroom, he heard Appellant say, "Touch it. Touch this right here," and "That's the spot." Upon opening his bedroom door and looking to the right, C.J. saw Appellant lying on the bedroom floor with J.G. standing over him, but he did not see Appellant touch J.G. Appellant then got up from the floor,

and walked into the bathroom, but C.J. did not confront him or J.G. regarding what had happened.

Several days later, Appellant and C.J. got into an argument, and as Appellant walked out of the house, C.J. stated to Susan: "I'm not the one that molested [J.G.]." C.J. then told his mother what he had seen and heard the morning of November 11, 2007, and after Susan asked him to repeat what he just said, she called Sarah. After learning from Susan that Appellant had touched J.G., Sarah called the police. Shortly after 10 p.m. on November 19, 2007, Deputy Jason Dujardin from the Montgomery County Sheriff's Office arrived at Sarah's home. Upon arrival, Deputy Dujardin talked to Sarah for thirty to forty-five minutes, and based on the provided information, both Deputy Dujardin and his supervisor believed there would be no physical evidence left behind, and so the deputy notified Detective Don Gay about the case in order to schedule a Children's Safe Harbor interview for J.G. Detective Gay then spoke with Sarah, advised her about Children's Safe Harbor, and set up a Safe Harbor interview for J.G. On November 27, 2007, Pennie Stanley, the Safe Harbor forensic interviewer, conducted an interview of J.G., whereas Karen Trevino, a sexual assault nurse examiner, examined J.G. Based on J.G.'s outcry, the results of her medical exam, and a written statement from C.J. regarding the incident, Detective Gay decided to refer this case to the District Attorney's office for charges.

Appellant was tried before a jury on a one-count indictment. After the State rested, Appellant moved for a directed verdict, but the trial court denied his motion. Appellant was convicted of indecency with a child by contact, and the court assessed his punishment at confinement for six years. Appellant subsequently filed a motion for new trial, and then filed a notice to appeal the trial court's judgment of conviction and sentence.

In Issue One, Appellant complains that he was deprived of his Sixth Amendment right to effective assistance of counsel because his trial counsel rendered ineffective assistance during the guilt-innocence phase of trial by failing to object to the State's admission of hearsay and bolstering evidence. We review claims of ineffective assistance of counsel under the two-step analysis adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *See Hernandez v. State*, 988 S.W.2d 770, 771-72 (Tex.Crim.App. 1999). "Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App. 2002).

On appeal, Appellant argues that the testimony of Ms. Stanley, the forensic interviewer, and the videotaped statement of J.G. constituted inadmissible hearsay and bolstering evidence, in particular because they were introduced prior to J.G.'s own trial testimony. As such, in Appellant's view, his trial counsel's failure to object to the admission of such evidence "can only be characterized as falling below an objective standard of reasonableness," and the counsel's "deficient performance prejudiced the outcome of [his] trial."

Under the first prong, the defendant must show that counsel's performance was deficient to the extent that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). Allegations of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001). The review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Id*. at 63. When the record

-3-

is silent as to counsel's motivations for tactical decisions, the appellant usually cannot overcome the strong presumption that counsel's conduct is reasonable. *Id.* In most cases on direct appeal, the record is not sufficiently developed and cannot adequately demonstrate the motives behind counsel's decisions. *Id.*

Under the second prong, the defendant must establish that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Jackson*, 877 S.W.2d at 771. Prejudice is established by a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Jackson*, 877 S.W.2d at 771. The prejudice analysis need not be addressed when the appellant fails to satisfy the first prong of the analysis. *See Mallett*, 65 S.W.3d at 68.

The record is silent as to why Appellant's trial counsel took or failed to take the actions he did. Indeed, Appellant concedes in his brief that although he requested dismissal of his trial counsel prior to the first trial of this case, "[h]is request was denied on February 2, 2009," and "[n]o reporter's record was made as to the reasons for [his] request, or the court's denial, because a hearing was not requested or held on the matter."[1] Appellant additionally stated that although he had filed a bar grievance against his attorney regarding a past issue, he did not indicate the nature of this grievance to the trial court. Our review of the record shows that on the last day of trial, upon the trial court's observation that Appellant had filed the grievance against his counsel, the court questioned Appellant as to whether he had "any issue with how [his trial counsel has] conducted himself in this trial up to this point." In response, Appellant stated, "No, ma'am. No

---

[1] In Appellant's first trial, the court declared a mistrial due to jury deadlock.

ma'am." When the trial court asked Appellant if he had "any issue with the way [trial counsel] has represented him in this trial," Appellant also answered, "No, ma'am."

Moreover, a trial counsel has no opportunity to explain his conduct if the defendant he represents does not raise an allegation of ineffective assistance of counsel in a motion for new trial. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005). Without such opportunity, an appellate court should not find the trial counsel's performance deficient, unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id*. at 392, *quoting Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App. 2001). In this case, Appellant filed a motion for new trial, but he did not raise any allegations of ineffective assistance of counsel in the motion.

We have no record explaining counsel's thought processes, or lack thereof, regarding the actions Appellant now complains of. Without a record explaining counsel's actions, we cannot determine that counsel was constitutionally deficient unless we determine the conduct was, "so outrageous that no competent attorney would have engaged in it." *See Goodspeed*, 187 S.W.3d at 392. Absent an evidentiary hearing in which defense counsel is provided the opportunity to explain his actions and trial strategy, we generally must presume that counsel rendered reasonably effective assistance. *See Jackson*, 877 S.W.2d at 771. Appellant has failed to carry his burden under the first prong of the *Strickland* test on his ineffective assistance claim. *See Garcia*, 57 S.W.3d at 440-41. Accordingly, Issue One is overruled.

In Issue Two, Appellant challenges the factual sufficiency of the evidence supporting his conviction. However, since Appellant's brief was filed, the Texas Court of Criminal Appeals has ruled that the only standard applicable to determine whether the evidence is sufficient to support

each element of a criminal offense is the *Jackson v. Virginia* legal sufficiency standard. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex.Crim.App. 2010)(holding that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense . . . ."). Therefore, in the interests of justice, and in light of the *Brooks* decision, we will construe Issue Two as a challenge to the legal sufficiency of the evidence. *See id*. A legal sufficiency review requires the appellate court to determine whether, "[c]onsidering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt." *Id*. at 899, *citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In conducting this review, we must defer to the jury's role as the sole judge of the credibility and weight that testimony is to be afforded. *Id*. at 899.

Appellant argues on appeal that absent inadmissible hearsay and bolstering evidence that were admitted at trial, "the State's proof of guilt is so obviously weak as to undermine confidence in the jury's guilty verdict." We note, however, that in a legal sufficiency review, we "must evaluate all of the evidence in the record, both direct and circumstancial, whether admissible or inadmissible." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999).

A person commits the offense of indecency with a child if, with a child younger than seventeen years of age and not the person's spouse, he engages in sexual contact with the child or causes the child to engage in sexual contact. TEX.PEN.CODE ANN. § 21.11(a)(1)(West 2011). "Sexual contact" includes any touching, including touching through clothing, of the anus, the breast, or any part of the genitals of the child if committed with the intent to arouse or gratify the sexual desire of any person. TEX.PEN.CODE ANN. § 21.11(c)(1). The specific intent to arouse or

-6-

gratify the sexual desire of a person can be inferred from a defendant's conduct, remarks, or all the surrounding circumstances. *See McKenzie v. State*, 617 S.W.2d 211, 216 (Tex.Crim.App. 1981); *Navarro v. State*, 241 S.W.3d 77, 79 (Tex. App.--Houston [1st Dist.] 2007, pet. ref'd).

In the instant case, on November 30, 2007, Detective Gay took down C.J.'s written statement regarding the incident upon locating him at his workplace. In the statement, C.J. indicated that after waking up on the morning of the incident, he heard Appellant say something about touching, and believing he was dreaming, he got up and lit a cigarette, and walked to his bedroom door. When he reached the doorway and looked towards the living room, he did not see anything, but when he looked towards Appellant's bedroom, he saw Appellant lying down on the floor there, with J.G. standing up next to Appellant.[2] When Appellant saw C.J., Appellant got up, said "hi" to C.J., and walked into the bathroom. At trial, C.J. testified to the foregoing information contained in his statement.

When Karen Trevino, a sexual assault nurse examiner, interviewed J.G. and asked her why she was at the examination that day, J.G. replied: "Because my grandpa touched my pee pee." Ms. Trevino testified that when J.G. said "my pee pee," she touched her vagina on the outside of her clothes. In response to Ms. Trevino's following question, "What did he touch you with?," J.G. replied: "His fingers." J.G. informed Ms. Trevino that nothing came out of Appellant's private part when this happened, and that this incident occurred only once in Appellant's bedroom on his bed. The one unusual finding Ms. Trevino made in J.G.'s case was generalized erythema, but that did not necessarily mean that a sexual assault or an indecency with

---

[2] At trial, C.J. testified that he observed J.G. standing "over" Appellant when the incident occurred.

a child occurred. However, based on J.G.'s responses during the physical examination, Ms. Trevino concluded Appellant digitally penetrated J.G.'s sexual organ.

Cindy Pulcher, an assistant district attorney for Montgomery County, then testified regarding the preparations she did with J.G. in this particular case, as well as J.G.'s demonstration of the incident to her. During the pretrial demonstration, when Ms. Pulcher asked J.G. whether Appellant touched her "inside" or "outside," J.G. answered, "Inside." J.G. also informed Ms. Pulcher that the incident occurred in Appellant's bedroom on his bed.

Subsequently, Pennie Stanley, a forensic interviewer, testified that she met with J.G. for a forensic interview, and a videorecording of their interview was shown to the jury during her testimony. Ms. Stanley testified that J.G. communicated as a normal five-year-old would, and none of J.G.'s responses raised a red flag for her. The video showed J.G. physically demonstrating to Ms. Stanley how Appellant touched her "pee pee." Based on certain anatomical drawings, J.G. referred to her vagina as her "pee pee," and this term signified both the female and male sexual organs to her. J.G. told Ms. Stanley that Appellant touched her underneath her underwear, and that Appellant placed his finger on top of her sexual organ. J.G. also informed Ms. Stanley that she told Susan about being touched by Appellant, and C.J. had seen and heard what happened.

According to Sarah Boyd, on November 11, 2007, she dropped J.G. off at Appellant's residence at 5:30 a.m. The next day, Susan Gerhardt called her at 9 p.m., and informed Sarah that C.J. told her that Appellant had touched J.G. At the end of the conversation, Sarah decided to call the police. After talking to the police, Sarah took J.G. to her bedroom, and asked her if

Appellant had touched her. In response, J.G. put her head down and answered, "Yes" in a quiet voice. During their conversation, J.G. revealed to Sarah that she had gone into Appellant's bedroom in the morning to ask for breakfast before the incident occurred. When Sarah asked J.G. where Appellant had touched her, J.G. replied that he had touched her "on her potty," referring to her private area. Using either a baby doll or a Care Bear, Sarah asked J.G. to show her where Appellant had touched her, and J.G. indicated that Appellant put his hands on her vaginal area. J.G. told Sarah that Appellant had asked her to pull down her pants before he touched her. J.G. informed her mother that when Appellant touched her down there, "his private area . . . grew bigger and it looked like a mushroom." J.G. also told Sarah that Appellant had asked her to touch his private area, but she said "no" to him.

At trial, J.G. testified that when she was in Appellant's bedroom and on his bed, he touched her on her potty with his finger. She testified that Appellant asked her to touch him on his potty as well, but she refused to do so. She also testified that C.J. was in the living room when the incident occurred.

Having reviewed the record in the light most favorable to the verdict, we conclude that the jury was rationally justified in finding Appellant's guilt beyond a reasonable doubt, and the evidence was legally sufficient to support Appellant's conviction. *See Brooks*, 323 S.W.3d at 899. Accordingly, Issue Two is overruled.

Having overruled Appellant's issues presented for review, we affirm the trial court's judgment.

September 14, 2011

DAVID WELLINGTON CHEW, Chief Justice

-9-

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)