**Opinion filed April 25, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00167-CR

_____

## TIWAN DESHON JOHNSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 9041-D**

## MEMORANDUM OPINION

Tiwan Deshon Johnson appeals his conviction for the second-degree felony offense of indecency with a child. The trial court assessed Appellant's punishment at confinement for a term of sixteen years. In four issues, Appellant challenges the judicial determination that he was competent to stand trial and claims that he was denied effective assistance of counsel. We affirm.

*I. Background*

The grand jury returned an indictment in May 2009 by which it charged Appellant with indecency with a child, and the trial court set his case for arraignment for June 19, 2009. Appellant's counsel explained during the arraignment that Appellant had recently returned from commitment for incompetency and that there was a psychiatric assessment that Appellant suffered from severe psychosis and had been diagnosed with schizophrenia eight years before.

Counsel called Appellant to testify so Appellant could "shed light on his grasp of what is truly going on." Appellant testified that he was retired from the rhythm and blues (R&B) industry and that Beyoncé was a past client. Appellant explained that he was on his own now because in 1983,[1] Beyoncé shot him in the back during a Mike Tyson fight. Appellant claimed that 50 Cent had also shot him.[2] Counsel argued that Appellant did not know who Appellant was, but the trial court concluded that it was an issue of sanity, not competency.

The trial court granted Appellant's subsequent request for the appointment of a psychiatrist to evaluate Appellant's competency to stand trial. Dr. Samuel Brinkman examined Appellant, reported that Appellant expressed "confused delusional thinking," and opined that Appellant was incompetent to stand trial. The trial court held a competency hearing and admitted the expert report without objection. The trial court found that Appellant was incompetent to stand trial. The State agreed with the expert's conclusion that Appellant should be committed for restoration to competency in a maximum security unit. On August 13, 2009, after a hearing, the trial court entered judgment that Appellant was not competent to stand trial and ordered that he be committed to the North Texas State Hospital.

In January 2010, a hospital psychologist reported that Appellant "should continue to be considered incompetent to stand trial." The trial court held another competency hearing and admitted the expert report into evidence. Appellant testified that he was a retired line cook and professional boxer, that he knocked out Oscar de la Hoya[3] in a fight, and that he played in the World Series when he was a batter for the Chicago Cubs. During his testimony, Appellant asked

---

[1]"Beyoncé" was born Beyoncé Giselle Knowles in 1981 in Houston, Texas. She is a seventeen-time Grammy award-winning singer-songwriter and record producer as well as a dancer, actress, designer, and entrepreneur.

[2]"50 Cent" was born Curtis James Jackson III in South Jamaica, Queens, New York. He is an American rapper, entrepreneur, investor, and actor.

[3]Oscar De La Hoya a/k/a "the Golden Boy" is an American boxer who won a 1992 Olympic Gold Medal, ten World titles in six different weight classes, and defeated seventeen world champions before retiring in 2009.

the trial court to find him competent so that he could go home and could stop taking the medications he had been prescribed; although they had helped, Appellant felt like he no longer needed the medication. On cross-examination, Appellant again said that his relationship with Beyoncé ended when she shot him in the back, and Appellant explained that his boxing and music career ended when he was shot. The trial court did not find that Appellant had regained competency. Accordingly, the trial court ordered that Appellant's commitment be extended for sixty days.

In February 2010, the trial court held a civil commitment hearing. Dr. Gayle Johnson, Appellant's treating physician, testified that Appellant was "in need of continued treatment" and that, in her opinion, Appellant posed a danger to others. Appellant's counsel stated that he had discussed the situation with Appellant and that his client opposed continued commitment and opposed taking the prescribed medications. Counsel then said, "However, I have attempted to consult with him concerning the underlying case, and he does not have the requisite competency to be able to assist me in working on this case. So in that respect, I am at odds with my client's desires." The trial court found that Appellant was mentally ill and likely to cause serious harm to himself or others and ordered that he be committed to the North Texas State Hospital "for inpatient care for a period not to exceed 12 months." Appellant was later moved to the Big Spring State Hospital in May 2010 after a review board concluded that he was "not manifestly dangerous."

On June 21, 2010, Dr. Johnson reported that Appellant had attained competency to stand trial. The trial court held a competency hearing a few weeks later. The State offered Dr. Johnson's June 2010 report into evidence, and defense counsel stated that Appellant "would join in offering" the report into evidence. The trial court asked the State and Appellant if either had any other evidence to offer, and both confirmed they had nothing further. Appellant's counsel said, "Your Honor, I would just offer my observations that I have been out there and visited with [Appellant] and he has been able to discuss these--the facts of this case with me, and I am satisfied that he is now competent." The trial court found that Appellant was competent to stand trial. Before the close of the hearing, the trial court granted Appellant's request for an examination by Dr. Brinkman to determine whether Appellant was sane at the time of the offense. Two months later on September 8, 2010, Appellant filed his notice of intent to raise the

insanity defense, but he withdrew the notice before trial. The jury found Appellant guilty of indecency with a child, and the trial court assessed punishment at sixteen years confinement.

## II. Issues on Appeal

In Issues One and Three, Appellant challenges the trial court's decision that he was competent to stand trial. Appellant contends that the trial court's reliance on the expert report without hearing additional evidence violated his right to due process. Appellant also contends that the trial court erred by failing to submit the issue of competency to a jury.

In Issues Two and Four, Appellant contends that he was denied effective assistance of counsel. First, he claims that his attorney failed to request that the jury determine whether Appellant was competent. Second, Appellant claims his counsel was ineffective because he failed to request that the psychiatric examination include an evaluation of Appellant's sanity at the time of the alleged offense and failed to ensure that the psychiatrist completed the requested evaluation.

## III. Analysis

### A. Determination of Competency to Stand Trial

We review a trial court's competency determination for an abuse of discretion. *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009). We do not substitute our judgment for that of the trial court; instead, we determine whether the trial court's decision was arbitrary or unreasonable. *Id.*

#### 1. Due Process Concerns

Appellant contends that the trial court's reliance on the expert report in making its competency determination violated his right to due process. The State argues that "the trial court may make the determination of competency solely on the basis of the report unless a party objects."

When a trial court determines that a defendant is incompetent to stand trial, it may commit the defendant "[f]or further examination and treatment toward the specific objective of the defendant attaining competency to stand trial." TEX. CODE CRIM. PROC. ANN. art. 46B.073(b) (West Supp. 2012). When the "head of the facility" concludes that the defendant has attained competency, he or she notifies the trial court and files a written report reflecting that determination. *Id.* art. 46B.079(b), (c). The defendant is then returned to the committing court. *Id.* art. 46B.081. Before the court may resume any criminal proceedings against the defendant,

there must be a judicial determination that the defendant is competent to stand trial. *Id.* art. 46B.084. Unless the defendant or the State objects within fifteen days of receiving the report from the trial court, the court is not required to hold a hearing and may base its competency determination on the medical report and on the defendant's other medical or personal history information. *Id.* The record reflects that neither the State nor Appellant objected to the report; therefore, the trial court was within its discretion to base its determination on the report alone.

Despite the lack of an objection, Appellant argues that an "independent judicial inquiry" into his competency is "mandated in order to ensure that the defendant's due process rights are protected." We note that Appellant does not contend that the statute permitting the trial court to base its competency determination on the expert report violates due process. We construe his argument to mean that, because the conviction of an incompetent person violates due process and because Appellant challenges the trial court's competency determination, his conviction, as an incompetent person, violates due process. Appellant cites only federal law in support of his argument.

Similar to the civil commitment statutes in Texas, the federal code provides that, when the "director of the facility" determines that the defendant is competent to stand trial, he shall file a certificate that reflects that determination and send a copy to the parties. 18 U.S.C. § 4241(e). In contrast to the Texas statute that requires a hearing only if a party objects to the expert report, the federal code mandates that the trial court "shall hold a hearing . . . to determine the competency of the defendant." *Id.* Regardless, the trial court held a hearing before making its competency determination in this case.

Appellant cites *United States v. Giron-Reyes*, 234 F.3d 78 (1st Cir. 2000), for the proposition that the trial court "had an obligation to make an independent inquiry into whether [Appellant] was competent to stand trial." In *Giron-Reyes*, the issue was whether the trial court had the discretion to forego the formal competency hearing prescribed by Section 4241(e). *Giron-Reyes*, 234 F.3d at 81–83. The First Circuit concluded that such a hearing is mandatory under the federal code. *Id.* "The intent that a reported change in competency be fully explored to meet due process concerns is evidence, moreover, by the explicit" requirement that the defendant "shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." *Id.* at 81–82 (quoting 18 U.S.C. § 4247(d)). The court noted that, "[a]lthough non-compliance with the

procedure set out in the statute does not necessarily violate due process," it did in that case because there was no hearing or opportunity for the defendant to contest the report. *Id.* at 80, 83.

Although the federal code mandates that a court hold a hearing to make a competency determination when there was an earlier finding of incompetency, the Texas code affords a defendant with the same opportunity to testify, present evidence, and challenge the determination that he is competent. *See* CRIM. PROC. art. 46B.084. Once the expert report is filed with the trial court, a party has fifteen days to object. *Id.* art. 46B.084(a). "If a party objects under Subsection (a), the issue shall be set for a hearing." *Id.* art. 46B.084(b). In addition, the hearing can be before a jury upon request by any party or the court. *Id.*

Although Appellant never objected to the expert report in this case, the trial court nonetheless held a hearing before making its determination. The trial court asked Appellant if he understood what was going on at the hearing and if he understood that the officials at the facility had determined that he was competent; Appellant answered affirmatively. Appellant and the State joined in offering the expert report into evidence. The trial court asked the State and Appellant if there was "any other evidence." Both answered that they had nothing further, and the trial court found that Appellant was competent to stand trial.

Appellant was afforded the same opportunity to contest the expert determination that is afforded to defendants under the Federal Code of Criminal Procedure's mandatory hearing requirement. Because the trial court can base its competency determination solely on the expert report, the trial court did not abuse its discretion when it determined at the hearing that Appellant was competent to stand trial. Appellant's right to due process was not violated.

### 2. *Jury Determination of Competency*

Appellant next contends that a jury should have determined the issue of whether he was competent to stand trial. According to Appellant, "[g]iven that Defense counsel did not request a jury make a determination of competency, the case must be reviewed to determine whether this error was so egregious and created such harm that appellant has not had a fair and impartial trial." To support his contention that the trial court erred by not instructing the jury on the issue at trial, Appellant relies on *Manning v. State*, 730 S.W.2d 744 (Tex. Crim. App. 1987), where the Court of Criminal Appeals addressed an issue relating to the court's charge to a jury during a pretrial competency hearing. Here, there was no jury trial on the issue of Appellant's competency; Appellant's reliance on *Manning* is misplaced.

6

When an accused objects to a report in which it is stated that his competency has been restored, he is entitled to a hearing before the court or, if requested, before a jury. CRIM. PROC. art. 46B.084(b). There is no evidence in the record that Appellant objected to the report during the fifteen-day period or at the hearing. To the contrary, Appellant joined with the State in offering the report into evidence and confirmed that he had no objection. Appellant never requested that a jury make the determination. Because Appellant did not object to the report or request a jury, it was not error for the trial court to make the competency determination. Appellant's first and third issues are overruled.

### B. Ineffective Assistance of Counsel

In his second and fourth issues, Appellant complains that he was denied the right to effective assistance of counsel. An accused is denied effective assistance of counsel when counsel's performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The *Strickland* test has two prongs: (1) whether counsel's conduct fell within the wide range of reasonable professional assistance and (2) whether there is a reasonable probability that the outcome would have differed but for counsel's errors. *Wiggins v. Smith*, 539 U.S. 510 (2003); *Strickland*, 466 U.S. at 686; *Andrews v. State*, 159 S.W.3d 98 (Tex. Crim. App. 2005). To overcome the presumption that counsel's conduct was reasonable and professional, the defendant must present evidence "firmly founded in the record" that counsel's decision was not "tactical or strategic," and the trial record is usually insufficient to do so. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

First, Appellant contends that counsel's performance was ineffective "when he did not request the jury to determine whether Defendant was competent and/or sane to stand trial." Appellant cites several instances at trial when he "exhibited truly bizarre behavior" and notes that he demanded to wear an orange jail jumpsuit at trial instead of street clothes. To the extent that Appellant argues that counsel was ineffective by failing to request an instruction in the jury charge during the guilt phase of trial on whether Appellant was competent to stand trial, we note that the same jury does not determine competency and guilt. *See* CRIM. PROC. art. 46B.053 (West 2006) ("If a jury determines that the defendant is competent and the trial on the merits is to be held before a jury, the court shall continue the trial with another jury selected for that

7

purpose."). Moreover, such an instruction at trial would never be necessary because, once a defendant is deemed incompetent, a determination of competency is statutorily mandated to occur before any criminal proceedings against the defendant may resume. *Schaffer v. State*, 583 S.W.2d 627, 630 (Tex. Crim. App. [Panel Op.] 1979) ("Since there was no judicial determination of appellant's competency to stand trial prior to the trial on the merits after he had earlier been found incompetent to stand trial by a verdict of a jury, the judgment is reversed and the cause remanded.").

Once "the defendant is found competent to stand trial, criminal proceedings against the defendant may be resumed." CRIM. PROC. art. 46B.084(d). Although Appellant argues that "there is substantial evidence that [he] is not competent," that "the jury was not instructed to determine whether the defendant was competent," and that this "case should be remanded to determine whether [he] was competent," there was a competency determination. As discussed above, the trial court found that Appellant was competent to stand trial during a pretrial competency hearing. Because a determination was made that Appellant was competent to stand trial and because Appellant was not entitled to a jury instruction or jury determination on competency, we conclude that Appellant's first claim of ineffective assistance of counsel is without merit.

Next, Appellant asserts that "counsel was ineffective by not requesting . . . inquiry as to whether [Appellant] was insane at the time of the alleged offense." The record shows that Appellant's trial counsel filed a "Motion for Psychiatric Examination of Defendant" asking for an evaluation of "defendant's sanity at the time of the offense." The trial court granted the request. Appellant's contention that counsel failed to request an inquiry into his sanity at the time of the offense is without merit.

Appellant's final complaint is that counsel was ineffective because the psychiatric report did not contain a determination of whether Appellant was insane at the time of the alleged crime. The trial court granted Appellant's request for psychiatric evaluation on July 8, 2010, the same day it determined that his competency to stand trial had been restored. Dr. Brinkman was scheduled to conduct the examination in his office on July 14, 2010. On July 8, 2010, counsel filed the statutorily required notice that he intended to raise the insanity defense.[4] On September 8, 2010, counsel requested appointment of a psychiatric expert and an investigator to

---

[4]*See* TEX. CODE CRIM. PROC. ANN. art. 46C.051 (West 2006).

assist with preparation of Appellant's defense. The trial court granted those requests. Appellant's counsel withdrew the notice of insanity defense nine months later, and there are no motions or any other indications in the record that Appellant did not receive the psychiatric evaluation as requested by his counsel and ordered by the trial court. We agree with the State that there does not appear to be anything in the record that suggests the examination was not completed. Appellant's counsel is presumed to have read the report and withdrawn the insanity defense based on what the report contained. Appellant's second and fourth issues are overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


April 25, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

9