

# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00285-CR

**LESTER BROUSSARD, JR.,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 12th District Court
Walker County, Texas
Trial Court No. 25424**

## MEMORANDUM  OPINION

In one issue, appellant, Lester Broussard, challenges the revocation of his community supervision, stemming from a 2011 deferred adjudication for forgery of a government instrument.  *See* TEX. PENAL CODE ANN. § 32.21 (West 2011).  Specifically, Broussard complains that his trial counsel was ineffective for failing to object or demand a mistrial when the prosecutor introduced inadmissible hearsay impeachment evidence that directly rebutted his defense.  We affirm.

## I. BACKGROUND

In May 2011, Broussard was charged by indictment with forgery of a government instrument. *See id.* Pursuant to a plea agreement with the State, Broussard pleaded guilty to the charged offense. The trial court deferred a finding of guilt and placed Broussard on community supervision for a period of three years with a $2,000 fine.

Thereafter, the State filed its first amended motion to adjudicate, alleging that Broussard had violated numerous conditions of his community supervision.[1] At a hearing on the State's first amended motion to adjudicate, Broussard pleaded "true" to the allegations contained in the State's motion. At the conclusion of the hearing, the trial court determined that Broussard had violated the conditions of his community supervision, found him guilty of the underlying offense of forgery of a government instrument, and sentenced him to two years' confinement in the State Jail Division of the Texas Department of Criminal Justice with a $2,000 fine. This appeal followed.

## II. ANALYSIS

In his sole issue on appeal, Broussard contends that his trial counsel was ineffective because he failed to object or demand a mistrial when the prosecutor asked two questions that purportedly elicited inadmissible hearsay impeachment evidence that directly rebutted his defensive theory.

---

[1] At the hearing on the State's motion, which was conducted on August 27, 2014, the State presented evidence that Broussard had not reported to his supervision officer since May 2012; that Broussard had tested positive for marihuana on January 31, 2012; that Broussard owes $4,159 in court-ordered costs and fees; and that Broussard completed only 4.75 hours of 200 court-ordered community-service hours.

## A.    Applicable Law

To prevail on a claim of ineffective assistance of counsel, an appellant must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  First, appellant must show that counsel was so deficient as to deprive appellant of his Sixth Amendment right to counsel. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.  Second, appellant must show that the deficient representation was prejudicial and resulted in an unfair trial. *Id.*  To satisfy the first prong, appellant must show that his counsel's representation was objectively unreasonable. *Id.*; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).  To satisfy the second prong, appellant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson*, 9 S.W.3d at 812.  A reasonable probability exists if it is enough to undermine the adversarial process and thus the outcome of the trial. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Mallett v. State*, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001).  The appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Thompson*, 9 S.W.3d at 813.  Our review is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Mallett*, 65 S.W.3d at 63; *Thompson*, 9 S.W.3d at 813.

The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel or counsel whose competency is judged by perfect hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983).  "Isolated instances in the record

reflecting errors of commission or omission do not cause counsel to become ineffective, nor can ineffective assistance of counsel be established by isolating or separating out one portion of the trial counsel's performance for examination." *Ex parte Welborn*, 875 S.W.2d 391, 393 (Tex. Crim. App. 1990). Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective, and an allegation of ineffectiveness must be firmly founded in the record. *Thompson*, 9 S.W.3d at 813.

Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Specifically, when the record is silent regarding the reasons for counsel's conduct, a finding that counsel was ineffective would require impermissible speculation by the appellate court. *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Therefore, absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To warrant reversal without affording counsel an opportunity to explain his actions, "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.'" *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). Though the record is silent as to the reasons for most of trial counsel's conduct, we will examine the record to determine if trial counsel's conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Goodspeed*, 187 S.W.3d at 392).

**B.      Discussion**

In its first amended motion to adjudicate, the State alleged that Broussard had violated his community supervision by, among other things, failing to report on a monthly basis to his supervision officer, failing to submit to and pay for drug and alcohol screens, failing a drug screen, and failing to pay various costs and fees. At the hearing on the State's motion, Broussard testified that he could not abide by the conditions of his community supervision because he had to take care of his five children. Specifically, Broussard explained that he failed to report to his supervision officer because he was asked to pay money at each visit—something he could not afford to do. When cross-examining Broussard, the State asked the following questions:

| | |
|---|---|
| Q [The State]: | Would it surprise you if Courtney Franklin, that her mother previously testified at her hearing that you didn't help with the kids at all? |
| A [Broussard]: | No. She don't like me. That's why she—I don't know why she do that. I've been working the whole time. My girl friend actually is the one that—she lost her job, so I have to—really have to work harder. |
| . . . . | |
| Q: | Would it surprise you if Courtney testified previously that you didn't help with the kids at all? |
| A: | No, she wouldn't—no, she wouldn't do that. Because she—I have been—I've been the man paying the bills and everything. She wouldn't—she wouldn't do me like—she wouldn't do me like that. |

No objections were made to these questions, and these questions are the basis for Broussard's ineffective-assistance-of-counsel claim.

Even assuming, *arguendo*, that Broussard satisfied the first prong of *Strickland*, we do not believe that the outcome of the hearing likely would have been different. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Mallett*, 65 S.W.3d at 62-63; *Thompson*, 9 S.W.3d at 812. In particular, the State alleged in its first amended motion to adjudicate that Broussard testified positive for marihuana, which constituted a violation of a condition of Broussard's community supervision. At the hearing on the State's motion, Broussard pleaded "true" to this allegation, and Sheila Hugo, deputy director for the Walker County CSCD, testified that Broussard tested positive for marihuana on January 31, 2012, and signed an admission to that effect on or about April 19, 2012. And when asked why he stopped reporting to his supervision officer after he failed his urinalysis for marihuana, Broussard responded: "That—that wasn't even an issue. I stopped—I stopped smoking after that. I really wasn't even smoking like that. I'm not a big smoker like that. I was—it was really—"

Texas courts have held that proof of any one of the alleged violations of the conditions of community supervision is sufficient to support a revocation order. *See Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2011); *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980) ("We need not address appellant's other contentions since one sufficient ground for revocation will support the court's order to revoke probation."); *Antwine v. State*, 268 S.W.3d 634, 636 (Tex. App.—Eastland 2008, pet. ref'd); *see also Mena v. State*, No. 14-12-00652-CR, 2013 Tex. App. LEXIS 7634, at *3 (Tex. App.—Houston [14th Dist.] June 25, 2013, no pet.) (mem. op., not designated for publication) ("When a trial court finds several violations of probationary conditions, we affirm the order revoking

probation if the proof of any single allegation is sufficient."). Broussard's defense targeted his inability to report to his supervision officer and his inability to pay corresponding costs and fees. Broussard did not dispute that he had smoked marihuana, in violation of the conditions of his community supervision.

Because the complained-of questions did not address Broussard's drug use, and because the State proffered sufficient evidence to demonstrate that Broussard's drug use violated the conditions of his community supervision, we cannot say that, but for trial counsel's purported failure to object to the complained-of questions, the result of the proceeding would have been different. *See Thompson*, 9 S.W.3d at 812; *Moore*, 605 S.W.2d at 926; *see also Diaz v. State*, No. 10-11-00269-CR, 2012 Tex. App. LEXIS 2029, at *4 (Tex. App.—Waco Mar. 14, 2012, no pet.) (mem. op., not designated for publication) ("As such, we can uphold the trial court's revocation of community supervision on those unchallenged grounds."); *Castro-Marquez v. State*, No. 14-11-00314-CR, 2011 Tex. App. LEXIS 10068, at **5-6 (Tex. App.—Houston [14th Dist.] Dec. 22, 2011, no pet.) (mem. op., not designated for publication); *Ferris v. State*, No. 01-09-00676-CR, 2011 Tex. App. LEXIS 1232, at **5-6 (Tex. App.—Houston [1st Dist.] Feb. 17, 2011, no pet.) (mem. op., not designated for publication) ("Thus, in order to prevail on appeal, the defendant must successfully challenge all of the findings that support the revocation order."). In other words, because we look to the totality of the representation, we cannot say that Broussard has satisfied his burden of proving by a preponderance of the evidence that his trial counsel was ineffective. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Thompson*, 9

S.W.3d at 813; *see also Gamble*, 916 S.W.2d at 92. We overrule Broussard's sole issue on appeal.

### III.   CONCLUSION

We affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
       Justice Davis, and
       Justice Scoggins
Affirmed
Opinion delivered and filed June 4, 2015
Do not publish
[CR25]

