

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00720-CR

Ramiro **MORENO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR6505
Honorable Philip A. Kazen, Jr., Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Catherine Stone, Chief Justice
    Karen Angelini, Justice
    Rebeca C. Martinez, Justice

Delivered and Filed: July 31, 2013

AFFIRMED

Ramiro Moreno appeals his conviction for one count of aggravated sexual assault of a child and two counts of indecency with a child. In one issue, Moreno makes a claim of ineffective assistance of counsel. Specifically, Moreno argues that his trial counsel was ineffective because (1) he introduced evidence of extraneous sexual offenses committed by Moreno; and (2) he failed to object to the report of the Sexual Abuse Nurse Examiner (SANE). We affirm the trial court's judgment.

The complainant, C.C., and her older sister H.C., were living in California with their dad and stepmom, but were visiting their mother in Texas at the time C.C. made an outcry against Moreno. C.C. was five years old at the time. The two girls were staying with their mother, who lived with a man named Sergio and members of his family. During the day, their mother would leave the girls alone in the house. Sometime during the day, Sergio's father, who was identified as Moreno, would return to the house.

According to C.C.'s trial testimony, there was one occasion when Moreno locked her in a bedroom, grabbed her hands, and "made [her] touch his thing." When C.C. came out of the bedroom, Moreno's daughter, Laura Martinez, was knocking at the door. C.C. went to the door and told Martinez what had happened. Martinez then called the police. C.C. went to the police station and then to the hospital. At trial, C.C. testified Moreno had never done anything like this to her before and that all he had her do was touch him. She did testify, however, that he had played games with her before, including a game where he bounced her on his lap.

Laura Martinez, Moreno's daughter, testified that on the occasion in question, she went to the house to see her mother. She had not seen her family in three years. When she knocked on the door, a small girl (later identified as C.C.) came to the door, and Martinez saw Moreno running toward the back of the house. Martinez asked C.C. what was going on. C.C. told her that "[h]e plays rough with me" and "[h]e plays with me in the room with just us in there." C.C. also told her that "[h]e shows me his privates" and "[h]e makes me sit on his neck." She also told Martinez he played a bouncing game with her. Martinez then called the police who responded by coming to the house.

On cross-examination, defense counsel questioned Martinez about an allegation of molestation she had made in 1991 against Moreno. Martinez responded she had made the allegation and Moreno had been indicted, but the case had been dismissed because she recanted.

Martinez also testified she had made a similar allegation of sexual molestation against her uncle, which did not result in a conviction or arrest because he lived out of the country. According to Martinez, the reason she had not seen her family for three years is because other family members had forgiven Moreno for what he did to her, but she had not forgiven him.

On re-direct, Martinez testified that she had recanted her allegation of sexual abuse against Moreno because, at the time, her mother was in the U.S. illegally. Martinez's mother told her she was concerned the family would be sent back to Mexico and lose their house. So, Martinez told her mother she would lie and say nothing ever happened. Specifically, Martinez testified that Moreno exposed himself to her, offered her money for oral sex, made her touch his private parts, and touched her breasts through her clothes.

Betty Mercer, testified that, in her capacity as a SANE nurse, she conducted an examination of C.C. The purpose of such an exam, according to Mercer, is to get a medical background history, do an exam, and then treat or refer as needed. Mercer's records were admitted as business records and reflect what C.C. told her about the incident in question. Mercer testified C.C. told her that Moreno made her touch his genitals; he had done it two times on two different days; and on the day Mercer examined C.C., Moreno had done it three times. C.C. also told Mercer that Moreno had touched his genitals to other parts of her body and that he put his hand inside her "yum-yum." Mercer further testified that based on what C.C. told her, she concluded there was penetration of the genital area. C.C.'s physical exam was normal, which can be consistent with the history C.C. provided.

### INEFFECTIVE ASSISTANCE OF COUNSEL

We measure a claim of ineffective assistance of counsel against the two-prong test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Hernandez v. State*, 726 S.W.2d 53, 55-57 (Tex. Crim. App. 1986) (applying *Strickland* test). A

person claiming that counsel was ineffective must prove, by a preponderance of the evidence, that (1) counsel's performance was deficient, falling below an "objective standard of reasonableness," and (2) the deficient performance prejudiced the defense such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012) (quotation omitted).

Further, we "indulge in a strong presumption that counsel's conduct fell within the wide range of reasonable assistance and that the challenged action might be considered sound trial strategy." *Id.* (quotation omitted). "The mere fact that another attorney might have pursued a different tactic at trial does not suffice to prove a claim of ineffective assistance of counsel." *Id.* "The *Strickland* test is judged by the 'totality of the representation,' not by counsel's isolated acts or omissions, and the test is applied from the viewpoint of an attorney at the time he acted, not through 20/20 hindsight." *Id.*

Thus, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision making as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Id.*; *Thompson*, 9 S.W.3d at 813. In the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel. *Bone*, 77 S.W.3d at 833. "Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield v. State*, 363 S.W.3d 591, 593 (Tex.

Crim. App. 2012) (quotation omitted). "If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *Id.* (quotation omitted).

Moreno's first ineffective assistance of counsel claim is based on his trial counsel's introduction of evidence, through Laura Martinez's testimony, of extraneous sexual offenses committed. At trial, Moreno's defense counsel elicited from Martinez the fact that she had made sexual molestation allegations against Moreno when she was a child and that she had also made allegations against her uncle. Martinez further testified that, for various reasons, no convictions resulted. In his brief, Moreno argues that "[i]t is difficult to see how eliciting evidence of multiple extraneous sexual offenses committed by your client against his daughter can be very helpful." While that argument, at first blush, may sound compelling, it is clear from the record that trial counsel did make a reasonable strategic decision to elicit Martinez's testimony regarding her previous allegation against Moreno of sexual abuse. Martinez was the outcry witness to whom C.C. first made an allegation against Moreno. Martinez testified that C.C. told her Moreno had showed C.C. his privates, had made her sit on his neck, and had played a bouncing game with her. Defense counsel attempted to impeach Martinez by showing she was acting out of self-interest and bias. In his closing argument, counsel explicitly explained his strategy:

> Now, as far as Laura Martinez, their whole case really depends on whether you are going to believe Laura Martinez, and keep in mind that it was the defense that brought out these other problems that Laura has had allegedly with [Moreno] and his family. We are the ones [who] brought it up for you to consider. Keep that in mind. We shown [sic] light on that. They didn't. We did. But when you do, you are going to have to — if you are going to be — or at least if you are going to follow your duty, you have to consider Laura Martinez's motives, her self-interest, her bias, and I'm not going to go on and on about it. You saw her. She has got some issues, serious, serious issues, and is that the kind of person that you are going to subject a person for the rest of his life to imprisonment based on her? Because she taints everything else, everything after Laura is tainted by her vengeance, by her hate. You have got to consider that in your equation, in your evaluation. Now, she is the cornerstone of everything that they have built.

Applying the *Strickland* standard, we cannot say that trial counsel's performance was deficient. We cannot say it was unreasonable for trial counsel to attempt to impeach the witness to whom the first outcry was made by showing she was biased against Moreno, especially given counsel's argument during closing that the State's entire case rested on Martinez's credibility.

Moreno's second allegation regarding ineffective assistance of counsel is based on his trial counsel's failure to object on hearsay grounds to the SANE nurse's report. Moreno points out that the evidence of penetration came from the SANE nurse's report. We cannot say, however, that this amounts to ineffective assistance of counsel because trial counsel has not been given the opportunity to explain his reasons for not objecting. Thus, this allegation of ineffectiveness is not firmly founded in the report. The record is simply not sufficient to show that counsel's actions were so deficient as to overcome the presumption of effective representation. Furthermore, even if defense counsel had objected to the SANE nurse's report on hearsay grounds, there are legal grounds for the trial court's admission of the report. *See Little v. State*, No. 04-08-00723-CR, 2009 WL 2882932, at *2 (Tex. App.—San Antonio 2009, no pet.) (holding statements of suspected victim of child abuse about the cause and source of the child's injuries are admissible under Texas Rule of Evidence 803(4) as an exception to the rule against hearsay). Thus, we cannot say that defense counsel's performance was deficient in failing to object to the SANE nurse's report.

Having found no error, we affirm the trial court's judgment.

Karen Angelini, Justice

Do not publish