

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00372-CR

Richard **SALAS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2014CR3657
Honorable Mary D. Roman, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  June 1, 2016

AFFIRMED

Richard Salas was convicted for violating the sex-offender registry requirements as provided in article 62.102 of the Texas Code of Criminal Procedure. He was found guilty by a jury and sentenced to eleven years of imprisonment. He appeals, arguing that he was denied effective assistance of counsel. We affirm.

### BACKGROUND

In 1999, Salas was convicted of indecency with a child by contact. Upon his release from prison, he was required to comply with the registration requirements of chapter 62 of the Texas

Code of Criminal Procedure. At trial, Officer Russell Garza testified that registered sex offenders are required by law to report changes in status within seven days of change. According to Officer Garza, he goes over a printed registration form, "CR-32", which contains the rules of registration, with all registrants at the time they register and when they report. Officer Garza testified that the rules mandate registrants report changes of address, jobs, phone numbers, and online identifiers. These forms must be filled out every time a registrant reports and every time a registrant changes address.

On January 27, 2014, Salas was released from prison. On February 4, 2014, Salas met with Officer Garza at the San Antonio registration office. Officer Garza filled out form CR-32, and Salas acknowledged his obligations by initialing next to each on the form. One of the obligations Salas acknowledged was the requirement that he notify and report to the local law enforcement authority of any municipality within seven days of changing his residence to that municipality. Salas provided Officer Garza with the address 846 Perez St. in San Antonio, Texas, as his residence.

Salas's mother, Virginia Gomez, testified that 846 Perez St. was her home, which she has owned for thirty-five years. According to Gomez, after her son was released from prison, she and her daughter took him to register as a sex offender, and he registered her address as his residence. Gomez testified that after Salas registered, she dropped him off at the Greyhound Bus Station. Salas said "he was going to Shepherd House of God" or the "Rich House of God." He said he had "a job over there and that he will have a room and [] food." "He said, 'Mom, I'm going to have everything over there, food, clothes, everything.'" Gomez testified that she never saw him at her house again.

Salas's sister, Juanita Aguinaga, testified that upon Salas's release from prison, he went to his mother's house to live. According to Aguinaga, she and her mother took Salas to register as a

sex offender and then, at his request, they dropped him off at the bus station. Like her mother, Aguinaga did not see Salas at her mother's residence again.

Officer Joseph Foxworth of the Conroe Police Department testified that on March 18, 2014, the police department received a call about a man behaving "too friendly" with children at a public park. Officer Foxworth testified that when he arrived at the park, he spoke with Kendra Lewis, the person who made the call. She pointed in the direction she last saw the man. Officer Foxworth found the man, identified as Salas, in the vicinity Lewis indicated. Salas was "playing with a Hispanic female child," who appeared to be about four or five years-old. Officer Foxworth asked the child's mother if Salas was with them, and she replied he was not. Officer Foxworth then asked Salas if he was with anyone at the park, and he said he was not. Officer Foxworth asked what he was doing in the park. Salas replied that "he was just there" "in the park relaxing." Officer Foxworth asked for his identification, which Salas supplied. Officer Foxworth ran the identification through TCIC/NCIC and got a return that Salas was a registered sex offender from San Antonio, Texas.

Officer Foxworth testified that he knew through his training and experience that sex offenders are not allowed to leave their registration area "for more than a very short amount of time," so he asked Salas how long he had been in Conroe. Salas replied that he had been there "for a couple of weeks." Officer Foxworth asked if Salas was living in Conroe, and Salas gave him the address of where he was staying: 1200 East Davis. Salas claimed that he had previously been in Willis, Texas, and before Willis, he had been in Huntsville, Texas. Officer Foxworth placed Salas in his patrol car and asked the woman of the child "if she wished to file charges on Mr. Salas for touching her child without her permission." "She told [Officer Foxworth] that she did wish to file charges, so [Officer Foxworth] placed [Salas] under arrest for a Class C assault." Officer Foxworth testified that before he took Salas to jail, he went to the address Salas had given and asked Salas

to point out exactly where he was staying. Salas indicated the home at the address he had given, which was a couple of miles from the park. Salas then produced a key, which Officer Foxworth was able to use to unlock the home. Officer Foxworth then took Salas to the jail.

Detective James Glisson testified that after receiving a call from Officer Foxworth, he conducted a follow-up investigation. He went over to 1200 East Davis and spoke with a couple of women there, who said Salas "had lived at that location previously." Detective Glisson testified that after speaking with witnesses, he learned that Salas had been at 1200 East Davis "on and off" for three weeks.

Augustin Felix testified that he lives at the residence in question and first met Salas at a work site in January or February of 2014. Salas said that he had been recently released from prison and was looking for work. Two or three days later, he saw Salas on the street on a cold night. Salas said he was not allowed to sleep at the Salvation Army. Felix invited him to stay at his home. Felix testified that Salas "stayed approximately one week."

After hearing all the evidence, the jury found Salas guilty of violating the sex-offender registration requirements as provided in chapter 62. Salas elected to have the jury assess punishment. At the start of the punishment phase, Salas pled true to the enhancement allegation of a prior conviction for the felony offense of burglary. The State presented evidence of Salas's criminal history. Salas called his mother and sister to testify. The jury returned a verdict of eleven years' imprisonment and a fine of $1,000. The trial court pronounced Salas's sentence the same day.

Salas's trial counsel filed a motion for new trial and a motion to withdraw as counsel. The motion for new trial did not raise ineffective assistance of counsel. Salas's trial counsel was allowed to withdraw, and appellate counsel was appointed. There was no motion for new trial

hearing. The appellate record does not indicate that the motion was ever ruled upon by the trial court. Salas then appealed.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his sole issue, Salas argues he was denied effective assistance of counsel. His complaint centers on evidence relating to him interacting with the child in the public park. Salas emphasizes that his trial counsel filed a motion in limine, which sought to exclude evidence that Salas was arrested at a park in Conroe after a mother called the police to complain that he was acting "too friendly" toward children. The motion argued that admission of this evidence would violate Texas Rule of Evidence 403. The trial court denied the motion in limine and ruled the evidence would be admissible at trial. At trial, defense counsel objected to the evidence being irrelevant but did not lodge an objection pursuant to Rule 403. In closing argument, defense counsel mentioned the incident at the park, stating that whatever happened there had nothing to do with what the jury was to decide in this case. In the motion for new trial, defense counsel argued again that Salas should be granted a new trial because the admission of this evidence violated Rule 403. In his brief, Salas argues his trial counsel was deficient because his trial counsel

> (1) failed to object to the inadmissible and prejudicial testimony that Mr. Salas was arrested in Conroe, Texas, at a playground with children present, even though counsel raised this issue in a motion in limine prior to trial, (2) alluded to the arrest in her closing argument, and (3) filed, but did not present, an on-point motion for new trial.

We measure a claim of ineffective assistance of counsel against the two-prong test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Hernandez v. State*, 726 S.W.2d 53, 55-57 (Tex. Crim. App. 1986) (applying *Strickland* test). A person claiming that counsel was ineffective must prove, by a preponderance of the evidence, that (1) counsel's performance was deficient, falling below an "objective standard of reasonableness," and (2) the deficient performance prejudiced the defense such that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012) (quotation omitted). Further, we "indulge in a strong presumption that counsel's conduct fell within the wide range of reasonable assistance and that the challenged action might be considered sound trial strategy." *Id.* (quotation omitted). "The mere fact that another attorney might have pursued a different tactic at trial does not suffice to prove a claim of ineffective assistance of counsel." *Id.* "The *Strickland* test is judged by the 'totality of the representation,' not by counsel's isolated acts or omissions, and the test is applied from the viewpoint of an attorney at the time he acted, not through 20/20 hindsight." *Id.* Thus, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Id.*; *Thompson*, 9 S.W.3d at 813. In the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel. *Bone*, 77 S.W.3d at 833. "Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (quotation omitted). "If trial counsel is not given that opportunity, then the appellate court should not find deficient performance *unless the challenged conduct was so outrageous that no competent attorney would have engaged in it*." *Id.* (quotation omitted) (emphasis added).

Here, Salas's motion for new trial did not raise ineffective assistance of counsel, and there was not a hearing on the motion. The record does not reflect trial counsel's reasons for failing to object at trial to the testimony at issue pursuant to Rule 403. Nor does the record reflect why trial counsel mentioned the testimony during closing argument. Salas argues that the error is firmly founded in the record because there is "no imaginable strategic motivation for counsel's decisions." We disagree. We do not find that trial counsel's conduct was so outrageous that no competent attorney would have engaged in it. *See id.* In looking at the totality of the representation, we hold that Salas has not met his burden under *Strickland*.

We affirm the judgment of the trial court.

Karen Angelini, Justice

Do not publish